Mildred FAIR, Plaintiff–Appellant,

v.

INTERNATIONAL FLAVORS & FRA-
GRANCES, INCORPORATED,
Defendant–Appellee.

No. 89–2200.

United States Court of Appeals,
Seventh Circuit.

Argued March 1, 1990.

Decided June 29, 1990.

Sheribel F. Rothenberg, Lamet, Kanwit
& Davis, Chicago, Ill., for plaintiff-appel-
lant.

Jeremy P. Sherman, Kay A. Hoogland,
Seyfarth, Shaw, Fairweather & Geraldson,
Chicago, Ill., for defendant-appellee.

Before CUDAHY, FLAUM and
KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

In 1982, Mildred Fair brought a Title VII
claim against her employer, International
Flavors & Fragrances ("IFF"), based upon
IFF's alleged discrimination against her on
account of her gender. On the eve of trial,
however, the two parties settled the claim.
IFF agreed to reinstate Fair to her former
position of Midwest Sales Service Manager,
to increase her salary to $33,000 per year
for approximately one and one-half years
and to give Fair a lump-sum "Settlement
Payment" (so denominated in Exhibit C of
the Settlement Agreement) of $85,000, less
applicable taxes. In return, Fair agreed to
cease reporting to work immediately at
IFF, to retire by the end of 1985 and to
protect the confidentiality of IFF's trade
secrets. Each party also agreed to release
the other from liability relating to Fair's
1982 suit and

> never to institute against [the other] any
> suit or action at law, in equity or other-
> wise, in any court or administrative agen-
> cy, with respect to any claim of any kind,
> or any other kind of relief, arising from
> any matter relating to her employment
> relationship with IFF, except as may be
> necessary to enforce the terms of this
> Settlement Agreement.

Exhibit A at ¶¶ 1, 2. Finally, the parties agreed to dismiss the action with prejudice.

Upon her retirement at the end of 1985, Fair complained that IFF improperly refused to include the $85,000 Settlement Payment in her compensation for purposes of calculating her pension benefits under IFF's Pension Plan. IFF, on the other hand, maintained that it properly calculated Fair's pension benefits under the Plan and that, in any event, Fair's release and covenant not to sue precluded her legal action relating to the terms of the Settlement Agreement. Not dissuaded, Fair filed a two-count complaint against IFF in the Northern District of Illinois: Count I alleged that IFF violated the terms of the Settlement Agreement by not considering the Settlement Payment to be part of Fair's "monthly compensation" for purposes of the Plan, and Count II alleged that IFF's exclusion of the Settlement Payment from Fair's pension calculations violated the terms of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. sections 1001 *et seq.*

Basing its decision on the briefs and a stipulated record, the district court entered judgment for IFF on both counts of the complaint. The district court reasoned in its oral opinion that the release and covenant not to sue precluded Count I, and that Fair failed to demonstrate in Count II that the administrator of IFF's Plan had acted arbitrarily or capriciously in denying her claim. Fair brought a post-trial motion to alter and vacate the judgment in light of the Supreme Court's grant of certiorari in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). After the Supreme Court issued its opinion in *Firestone*, which outlined the standards by which courts should review decisions of administrators construing ERISA plans, the district court denied Fair's motion. Fair appeals to this court and we affirm.

---

**1.** We note that there is little question that courts may enforce general releases: "There appears to be no general public-policy bar to negotiated releases of employment-discrimination claims. '[P]resumably an employee may waive his cause of action under Title VII as part of a voluntary

## I. *The Release and Covenant Not To Sue*

Fair claims that the district court erred in concluding that her agreement never to bring suit against IFF on any claim arising from her employment relationship precluded her from bringing this action. She posits two arguments in support of this claim: first, that IFF, "in its capacity as plan administrator," is not protected by the release and covenant not to sue, and second, that Illinois law provides that general releases will not be construed to preclude claims not known to or contemplated by the parties at the time a release was executed. We address each of these arguments in turn.[1]

■ Fair's first claim is easily dismissed. As a preliminary matter, her amended complaint names "International Flavors & Fragrances, Inc." as the sole defendant in her action; her claim, therefore, that IFF—in its capacity as "employer"—is not involved in this suit is somewhat specious. Moreover, the terms of the Settlement Agreement apply to suits brought by Fair against "IFF, its agents, employees, officers, directors, successors and assigns...." Exhibit A at ¶ 1. Nowhere do these terms suggest that the release and covenant apply to IFF only when its acts in certain capacities; the only reasonable construction of the Settlement Agreement, we believe, is that Fair cannot bring legal action (relating to her employment relationship) against IFF in any of its capacities.

■ Fair's second claim—that courts should not recognize general releases of claims not known to or contemplated by the parties at the time of the release—has a firm basis in law. *See, e.g., Beauvoir v. Rush–Presbyterian–St. Luke's Medical Center*, 137 Ill.App.3d 294, 92 Ill.Dec. 110, 484 N.E.2d 841 (1st Dist.1985). Since her ERISA claim was "nonexistent" at the time

settlement.' *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 52 [94 S.Ct. 1011, 1021, 39 L.Ed.2d 147] (1974)." *Oglesby v. Coca–Cola Bottling Co.,* 620 F.Supp. 1336, 1341 (N.D.Ill.1985); *see Riley v. American Family Mutual Ins.,* 881 F.2d 368, 371 (7th Cir.1989).

of execution—she did not retire for another year and one-half—Fair claims that the release cannot be read to preclude a suit to recover her pension benefits.

We disagree. "It is well established a general release is valid as to all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry." *Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.,* 568 F.Supp. 1096, 1101 (N.D.Ill.1983); *see Goodman v. Epstein,* 582 F.2d 388, 402–04 (7th Cir.1978), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979); *Oglesby v. Coca–Cola Bottling Co.,* 620 F.Supp. 1336, 1342 (N.D.Ill.1985). In this case, the record suggests that Fair may have had actual knowledge of IFF's refusal to categorize the $85,000 as wages (for pension purposes), and, in any event, certainly had sufficient constructive knowledge to support the release and covenant not to sue. The parties executed the Settlement Agreement less than two years before Fair was scheduled to receive her pension. More important, the agreement expressly required Fair to "cease reporting to work for IFF." Settlement Agreement at ¶ 5. In essence, the parties traded money for Fair's promise to leave immediately (and, of course, to withdraw the suit); given the nature of this trade—specifically, the fact that the Settlement Agreement did not reinstitute the working relationship between IFF and Fair (aside from the payment of a salary [2] and a nominal title)—the parties certainly should have been aware of any impact the Settlement Agreement might have upon Fair's impending retirement benefits. Indeed, the Settlement Agreement explicitly refers to Fair's retirement, providing that she was required to retire from IFF if she obtained employment elsewhere before January 1, 1986. *Id.* at ¶ 4.

Further, IFF earlier had provided Fair with a copy of the Summary Plan Description, *see* M. Lemmerman Affidavit at ¶ 16;

this reference guide explained how IFF calculates its pension benefits and states specifically that "[o]vertime, shift differential, commissions, bonuses and *other special payments are not included*" in the "basic monthly earning rates" category used to calculate pension. Appellee's Brief at 5 (emphasis supplied). These facts strongly suggest that Fair was or should have been aware of IFF's treatment of the $85,000 Settlement Payment for purposes of her pension calculations.[3]

The plain language of the Settlement Agreement precludes Fair from bringing suit against IFF on any claim arising from her employment relationship with IFF. The Settlement Agreement does not provide that IFF must consider the $85,000 Settlement Payment to be part of her monthly compensation for purposes of her pension; Fair's attempts to add that language now are unavailing. The district court properly dismissed Count I of the Complaint.

## II. *Fair's ERISA Claim*

■ Count II of Fair's complaint alleges that IFF violated the terms of ERISA by arbitrarily and capriciously refusing to add the $85,000 Settlement Payment to her compensation for purposes of calculating her pension. Specifically, she charges that the definition of compensation contained in IFF's Employee Benefit Plan does not exclude the Settlement Payment. Amended Complaint at ¶ 13. The district court considered the substance of this claim and concluded that Fair did not demonstrate that IFF's administrator acted arbitrarily or capriciously in construing the terms of the Plan. Fair now challenges this ruling, reasoning that the court applied the outdated "arbitrary and capricious" standard of reviewing the administrator's decision instead of reviewing the decision *de novo* as directed by the Supreme Court in *Firestone Tire & Rubber Co. v. Bruch,* 489

---

**2.** Incidentally, IFF did include the $33,000 salary in its calculations of Fair's pension.

**3.** Fair does not claim that she signed the Settlement Agreement without examining its con-

tents; since she was represented by counsel at all stages of the negotiations, such a claim probably would be fruitless. *See Riley v. American Family Mutual Ins.,* 881 F.2d 368 (7th Cir.1989).

U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

We do not reach the substance of Fair's challenge. We have already determined that Fair released IFF from liability relating to the 1982 suit and agreed

> never to institute against IFF any suit or action at law, in equity or otherwise, in any court or administrative agency, with respect to any claim of any kind, or any other kind of relief, arising from any matter relating to her employment relationship with IFF, except as may be necessary to enforce the terms of this Settlement Agreement.

Exhibit A at ¶ 1. Whether Fair's suit to include the $85,000 Settlement Payment in her compensation (used to calculate pension benefits) is characterized as a suit based upon the Settlement Agreement or ERISA, it still constitutes a claim "arising from any matter relating to her employment relationship with IFF," and is therefore covered by the covenant not to sue. *Id.* Drawing upon our analysis of Count I, we see no reason why the covenant not to sue does not apply to Fair's ERISA claim as well.

Fair offers little defense to this analysis, asserting only that IFF did not raise this argument below and therefore has waived it. Petitioner's Reply Brief at 4 n. 5. That is simply incorrect. After Fair added the ERISA count to her Amended Complaint, IFF claimed that the *entire action* was barred by the covenant not to sue. *See, e.g.,* Defendant's Memorandum in Support of Dismissal on a Stipulated Record at 7 (Feb. 12, 1988) ("This provision unambiguously precludes Plaintiff from suing IFF *based on claims of any kind* 'arising from any matter relating to her employment relationship with IFF.' It is patently clear that *the instant suit*, however, is based upon a claim that relates to her employment with IFF and, therefore, falls within the terms of the covenant.") (emphasis supplied). We see no other reason—and Fair offers none—why the covenant should not apply to Count II as well as to Count I. We therefore hold that the district court's dismissal of Count II was also proper.

### III. *Conclusion*

IFF and Fair made a deal: in return for Fair's promise not to sue and not to return to work, IFF agreed to pay Fair an increased salary and a lump-sum Settlement Payment. Presumably, the terms of the settlement reflect the value to IFF of Fair's absence and her withdrawal of the suit. Had Fair insisted at the bargaining table that the Settlement Payment be included in her monthly compensation (for purposes of her pension), the nominal value of IFF's settlement offer to it presumably would have been diminished. We refuse to give Fair for free what she evidently declined to purchase at the settlement negotiations for a price.

AFFIRMED.