FASA CORPORATION and Virtual World Entertainment, Plaintiffs,

v.

PLAYMATES TOYS, INC., Defendant.

No. 93 C 2445.

United States District Court, N.D. Illinois, Eastern Division.

June 23, 1995.

Karen Beth Ksander, Catherine Ann Van Horn, Liza Marie Franklin, Sonnenschein, Nath & Rosenthal, Chicago, IL, for FASA Corp. and Virtual World Entertainment.

Paul R. Garcia, Kirkland & Ellis, Mark Partridge, David C. Hillard, Brett A. August, Marianne E. Ryan, Maxine S. Lans, Pattishall, McAuliffe, Newbury, Hillard & Geraldson, Chicago, IL, Jack D. Samuels, Los Angeles, CA, for Playmates, Toys Inc.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Beginning on June 19, 1995, the Court began the first phase of a potential four phase bench trial in this matter which involves an intellectual property dispute involving futuristic robot-like battle toys. Due to the scope and complexity of the issues to be tried in this case, See *FASA Corp. v. Playmates Toys, Inc.*, 869 F.Supp. 1334–1365 (N.D.Ill.1994), this Court entered Trial Sequence and Timing Orders on June 6, 1995 and June 9, 1995, which are attached hereto as Appendices A and B.

The Court hereby enters the following Findings of Fact and Conclusions of Law at the conclusion of Sequence One of the trial which addressed Playmates' affirmative defense of waiver.[1] The Findings of Fact are based upon consideration of all the admissible evidence as well as this Court's assessment of the credibility of the trial witnesses.

---

1. Over the objection of FASA, this Court decided to try this affirmative defense first because FASA's failure to survive this defense would have obviated the need to proceed with the remaining issues in this trial, which was originally projected to last twenty-five trial days.

## I. FINDINGS OF FACT—GENERAL

The following factual findings are based on all of the competent evidence adduced at trial and are essentially undisputed by the parties:

1. Plaintiff FASA Corporation ("FASA") is an Illinois corporation with its principal place of business in Chicago, Illinois.

2. FASA is the creator, developer, publisher, promoter and distributor of various fictional universes, including but not limited to BATTLETECH, which form the basis for board games, role-playing games, novels, game systems and other game supplements.

3. FASA licenses the intellectual property and proprietary rights in BATTLETECH to third parties for the development of location-based interactive entertainment games and centers, disk-based computer games, cartridge-based computer games, models, miniatures, merchandise, movies, television programming, toys and other items.

4. Plaintiff Virtual World Entertainment ("VWE") is a Delaware corporation with its principal place of business in Burbank, California, and an office in Chicago, Illinois.

5. VWE was founded by the creators of BATTLETECH in 1987.

6. VWE is a virtual reality entertainment company engaged in the acquisition, development, operation, licensing and franchising of location-based virtual reality entertainment games and entertainment centers associated with BATTLETECH and other games.

7. Defendant Playmates Toys, Inc. ("Playmates"), is a California corporation with its principal place of business in La Mirada, California.

8. Playmates is a distributor of toys supplied by a related company, Playmates Toys (Hong Kong) Ltd. ("Playmates HK"), including TEENAGE MUTANT NINJA TURTLES, STAR TREK, ADDAMS FAMILY and various Disney characters, and also participates in the development of toys pursuant to an agreement with Playmates HK.

9. Plaintiffs FASA and VWE [2] have sued Playmates alleging federal and common-law unfair competition (Counts I and II, respectively), copyright infringement (Counts III and IV), trademark infringement (Counts V and VI), dilution under Illinois' anti-dilution statute, 765 ILCS 1035/15 (Counts VII and VIII), and tortious interference with prospective business advantage (Count IX).

10. The lawsuit centers on Playmates' alleged infringement of FASA's intellectual property and proprietary rights in BATTLETECH by designing and marketing the ExoSquad toy line.

11. On December 5, 1994, this Court denied Playmates' Motion for Summary Judgment with respect to FASA's claims for federal unfair competition (Count I), copyright infringement (Counts III and IV) and trademark infringement (Counts V and VI) and granted Playmates' Motion for Summary Judgment with respect to Playmates' claims for common law unfair competition (Count II), dilution (Counts VII and VIII) and tortious interference (Count IX). *FASA Corp. v. Playmates Toys, Inc.*, 869 F.Supp. 1334 (N.D.Ill.1994).

## II. FINDINGS OF FACT—WAIVER ISSUE

12. In late 1991, Robert Allen, a Cincinnati, Ohio, toy designer, asked FASA for the opportunity to interest toy companies in the BATTLETECH property.

13. Although Allen and FASA never reached agreement on the nature and scope of Allen's role, FASA did permit Allen to make at least three presentations to toy companies regarding a BATTLETECH toy line.

14. In response to a telephone inquiry, Playmates invited Allen to its California headquarters for a meeting to discuss several toy designs, including BATTLETECH.

15. On December 10 or 11, 1991, Allen met with Chris Devine Dailey, an employee of Playmates, and presented three potential toy lines: BATTLETECH, Wendy And Her Wagon and Speedballs.

**2.** Unless the context requires otherwise, these Proposed Findings of Fact will refer to FASA and VWE collectively as "FASA."

16. When Allen arrived at Playmates on December 11, 1991, to present BATTLETECH, Playmates presented Allen with an untitled document that Playmates represented as its standard "New Product Submission Form." (Joint Ex. 13) This New Product Submission Form reads as follows:

It is the policy of Playmates Toys, Inc. not to review or consider any unsolicited proposals of any kind.

You have advised us that you have an "idea" which you believe may be of interest to us.

We are prepared to consider your idea only upon the following terms:

1. You will expressly waive any and all claims of any kind whatsoever, past, present or future, known or unknown against Playmates Toys, Inc. in any way relating to or connected to the "idea".

2. In consideration for such waiver, Playmates Toys, Inc., will review your "idea" in written form. We will return all materials submitted in connection therewith within two weeks after submission.

3. At our sole and complete discretion, we may then enter into negotiations with you for a contractual agreement regarding the idea.

4. Except as to any future agreement entered into under Paragraph 3, we shall have no obligation of any kind toward you in connection with the proposed idea.

The disclosed matter relates to: [handwritten] (1) "BATTLETECH" (2) "WENDY & HER WAGON" (3) "SPEEDBALLS".

17. Allen had signed nondisclosure or new product submission forms before which did not require or include waivers of either copyright or trademark infringement claims or of other future unknown claims by the owner of the property.

18. Chris Dailey did not tell Allen that the form included a waiver of any rights. Ms. Dailey did not explain the form to Allen.

19. Playmates knew that Allen was not an employee of FASA.

20. Although Playmates had never dealt with FASA in the past, Playmates made no effort to verify Allen's authority.

21. At no time did Playmates attempt to contact FASA. There was no communication of any type between Playmates and FASA until this lawsuit was filed.

22. FASA did not explicitly authorize Allen to waive any of its intellectual property rights in BATTLETECH. (Tr. 171)

23. Allen did not believe that he was authorized by FASA to waive FASA's intellectual property rights in BATTLETECH. (Allen Decl. ¶ 5)

24. Allen never contacted FASA to obtain permission to sign the waiver form. (Tr. 107–08)

25. Allen never represented to Playmates that he had any authority or power to waive legal claims on behalf of FASA. (Tr. 27 [Daily testimony]; Tr. 71–191 [Allen Testimony]; Allen Decl.)

26. At the conclusion of the meeting, Allen left various printed BATTLETECH materials with Dailey for Playmates' review. Those materials included a video tape, a poster featuring over 48 BATTLEMECH designs, a FASA catalogue which displayed all of FASA's products and a press kit on The BATTLETECH Center containing various newspaper articles and a BATTLETECH Center Operations Manual. (PGX 18J, PX 281)

27. Ms. Dailey told Allen that Playmates would not inform him of any decisions regarding the BATTLETECH toy line until after the February, 1992, Toy Fair.

28. In late May or early June, Playmates notified Allen that it was no longer interested in a BATTLETECH license.

29. While the Court finds that many toy companies use nondisclosure or new product submission forms—the Court finds that such companies do not require, as a standard practice, a waiver of all the intellectual property rights held by the inventor. In this regard, the Court notes that Playmates' own experts testified that it is not typical in the toy industry for a toy company to require an inventor to waive all rights to the invention

in order to submit it for review. (Tr. 37 [Delaney testimony], 58 [Shackelford testimony]) Moreover, even Playmates' president testified that he did not understand the waiver provision in Playmates' new product submission form to include a waiver of copyright, trademark, or patent claims. (Tr. 24)

## CONCLUSIONS OF LAW

1. California law governs the agency law issue of whether FASA is bound by the purported waiver of its agent, Allen. *FASA Corp.*, 869 F.Supp. at 1343–44.

2. Under the California Civil Code, "[a]n agent has such authority as the principal, actually or ostensibly, confers upon him," CAL.CIVIL CODE § 2315, and "[a]n agent represents his principal for all purposes within the scope of his actual or ostensible authority." CAL.CIV.CODE § 2330. Only those liabilities "which would accrue to the agent from transactions within [his actual or ostensible authority], if they had been entered into on his own account, accrue to the principal." *Id.*

3. Playmates failed to establish that Allen had either actual or ostensible authority to bind FASA when he signed Playmates' waiver.

4. "Actual authority is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." CAL.CIVIL CODE § 2316.

5. FASA did not intentionally confer upon Allen authority to sign a waiver of FASA's intellectual property rights.

6. Allen did not believe himself to have authority to sign a waiver of FASA's intellectual property rights.

7. Because FASA did not confer authority on Allen to waive its intellectual property rights in BATTLETECH, and because Allen did not believe that he had authority to waive FASA's intellectual property rights, the Court finds that Allen did not have actual authority to waive FASA's intellectual property rights.

8. Nor can Playmates prevail by invoking section 2319 of the California Civil Code, which provides that "[a]n agent has authority: (1) [t]o do everything necessary or proper and usual in the ordinary course of business, for effecting the purpose of his agency." CAL.CIV.CODE § 2319. The overwhelming trial testimony reveals that while the signing of some sort of disclosure is standard practice in the industry, the signing away of all of an inventor's intellectual property rights is by no means standard. Therefore, Mr. Allen's signing of the general waiver was not necessary to accomplish the purpose of his agency—to make a preliminary business presentation to Playmates.

9. Playmates has failed to establish that Allen had ostensible authority to waive FASA's intellectual property rights in BATTLETECH. "Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes a third person to believe the agent to possess." CAL.CIVIL CODE § 2317.

10. Ostensible authority, under California law, "arises as a result of conduct of the principal which causes the third party reasonably to believe that the agent possesses the authority to act on the principal's behalf." *United States Credit Bureau, Inc. v. Cheney*, 235 Cal.App.2d 357, 360, 45 Cal.Rptr. 525, 527 (1965).

11. Ostensible authority is predicated on the doctrine of estoppel: If a principal, by its acts, leads another to believe that it has conferred authority upon an agent, it will be estopped from asserting—as against the person who has justifiably relied on the principal's acts—that it did not intend to confer such authority. *Yanchor v. Kagan*, 22 Cal.App.3d 544, 549, 99 Cal.Rptr. 367, 370 (1971). Thus, ostensible authority is predicated on the acts or declarations of the principal *vis-a-vis* the third party. *Dill v. Berquist Constr. Co.*, 24 Cal.App.4th 1426, 1438, 29 Cal.Rptr.2d 746, 752 (1994); *People v. Torres*, 136 Cal.App.3d 556, 562, 186 Cal. Rptr. 385, 389 (1982).

12. FASA did not give Playmates any valid factual reasons to reasonably believe Allen was authorized to bind FASA to a complete, total waiver of its rights. Simply put, there was no conduct on FASA's part

that reasonably could have led Playmates to believe that Allen had authority to sign the purported waiver.[3]  Instead, Playmates relies on little more than that Allen was acting as FASA's agent and as we have noted in the Court's summary judgment opinion, this does not establish ostensible authority.  *FASA Corp.*, 869 F.Supp. at 1346 (citing *Turner v. Citizens Nat'l Bank*, 206 Cal.App.2d 193, 23 Cal.Rptr. 698, 704 (1962)).  Accordingly, we conclude that Allen did not have ostensible authority to waive FASA's intellectual property rights.

13.  We conclude that under California's law of agency, FASA cannot be bound by Allen's purported act of waiving FASA's intellectual property rights in BATTLETECH.

14.  Having determined that FASA cannot be bound by Allen's purported waiver of its intellectual property rights, our inquiry could be at an end.  However, we proceed to offer an alternate basis for our holding that FASA is not bound by Allen's purported waiver—namely, that Playmates' waiver form is unenforceable as a matter of law.  This issue, as the parties concede, seems to be one of first impression.

■ 15.  As a threshold consideration in assessing the enforceability of the purported waiver, we must address what law governs this issue.  Playmates contends that since the underlying claims at issue are federal claims, federal law controls.  And, in this limited sense, they are correct.  However, as FASA correctly notes, in *Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449 (7th Cir.1991), the Seventh Circuit adopted the position that

> The federal law [in the area of the scope of the validity of a release of a federal cause of action] arises through the incorporation

of "state rules of decision" which "furnish an appropriate measure of the governing federal law."

*Id.* at 458.  The court explained that,

> "in fashioning a federal rule of decision, courts must often look to the applicable state law for guidance in areas where Congress has not provided for a uniform federal law."

*Id.* at 458.

The wisdom of this practice lies in the fact that it obviates the need for the first federal court to hear an issue to invent a uniform federal rule—a circumstance that "leaves too much to chance."  Thus, strictly speaking, although federal law controls the issue, we look to state law for guidance in formulating the rule of decision.[4]

■ 16.  In the instant case, we find that federal authority, as well as that of Illinois and California converge on the conclusion that Playmates' waiver form is unenforceable because it purports to require the signor to waive unknown future claims.  Such a waiver is void as against public policy.

17.  The California Civil Code provides that "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release...."  Cal.Civ.Code § 1542.  Thus, we believe that California recognizes the general proposition that a waiver of future unknown claims is unenforceable.

18.  Similarly, under Illinois caselaw, "A general release is inapplicable to an unknown claim."  *Farm Credit Bank of St. Louis v. Whitlock*, 581 N.E.2d 664, 163 Ill.Dec. 510, 144 Ill.2d 440 (Ill.1991).

---

**3.**  The following passage from the Court's summary judgment opinion in this matter remains as true now, following trial, as it was at the pretrial phase of this litigation:

> Playmates has submitted no evidence establishing that FASA engaged in any conduct or made any representation *vis-a-vis* Playmates upon which Playmates could justifiably rely in believing that Allen was authorized to sign a waiver on FASA's behalf.  Indeed, Playmates has submitted no evidence indicating that FASA ever had any communications or contact

with Playmates whatsoever—regarding Allen or otherwise.

*FASA Corp.*, 869 F.Supp. at 1345–46.

**4.**  Even if we were to accept Playmates' argument that under *United States v. Kimbell Foods*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), the Court should not look to state law in fashioning the federal rule, our conclusion would be no different.  As we shall explain, sound public policy compels the conclusion that a purported waiver of future, unknown intellectual property claims is unenforceable.

19. The Court finds no federal authority supporting Playmates' position that waiver of future unknown claims is valid. Playmates has not pointed to a single case giving effect to a waiver of future unknown claims. Notwithstanding Playmates' suggestion to the contrary, *Beer Nuts, Inc. v. King Nut Co.,* 477 F.2d 326 (6th Cir.1973), does not support the assertion that a waiver of future unknown intellectual property claims may be enforced. In *Beer Nuts,* King Nut Company sought to defend against an infringement suit by asserting that the trademarked name "Beer Nuts" had evolved into a descriptive term causing the trademark to lose its validity. This defense flew in the face of an earlier settlement agreement wherein the King Nut Company recognized the validity of the trademark "Beer Nuts" and contained a provision that the contract would be perpetual and binding on the parties and their assigns. Thus, *Beer Nuts* did not involve a waiver of future and unknown claims at all; instead, it merely involved King Nuts' effort to escape the effect of its recognition of the validity of the "Beer Nuts" trademark once it believed that the mark had evolved into an invalid one. King Nuts efforts in this regard were tantamount to arguing that it should be able to repudiate its promise because conditions (*viz.,* the distinctiveness of the mark) had changed. We find the case inapposite. Playmates also points to *Central Illinois Pub. Serv. Co. v. F.E.R.C.,* 941 F.2d 622 (7th Cir.1991), as an example of the "Seventh Circuit enforcing a release broadly against unspecified future claims." (Tr. 206) However, a careful reading of that case reveals that, although the release at issue contained broad language purporting to release future unknown claims, the issue presented to the court did not involve enforcement of the release as to future claims at all. Instead, the claims sought to be asserted (*viz.,* entitlement to a credit for utility costs), but held barred by the release, came into existence at least one year before the release was signed. Thus, the Seventh Circuit had no occasion to address whether a waiver of future unknown claims is enforceable or void as against public policy. *Contrast Fair v. International Flavors & Fragrances, Inc.,* 905 F.2d 1114, 1115 (7th Cir.1990) (noting, in the context of an ERISA suit, that the argument "that courts should not recognize general releases of claims not known or contemplated by the parties at the time of the release . . . has a firm basis in law"). Finally, we note that Playmates' citation to *Artvale, Inc. v. Rugby Fabrics Corp.,* 363 F.2d 1002 (2d Cir.1966), provides little guidance because although, the Second Circuit enforced a settlement agreement provision that can be construed as a waiver of future claims, the court did not consider the issue of the enforceability of such waivers—and, it is quite likely that the issue was not even presented to the court. The court's total silence on the issue cannot be construed, as Playmates would have it, as a affirmative holding to the effect that such waivers are enforceable. Thus, we do not consider *Artvale* persuasive authority that as a general rule waivers of future unknown claims are enforceable.

20. In the Securities context a waiver, like the waiver sought to be enforced by Playmates, is explicitly precluded by statute. Section 29(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(a) provides that "Any . . . provision binding any person to waive compliance with any provision of this chapter . . . be void." The Seventh Circuit has noted that Section 29(a) "mandates that a purported release of claims under the federal securities laws is valid *only* as to mature, ripened claims of which the releasing party had knowledge before signing the release." *Goodman v. Epstein,* 582 F.2d 388, 402 (7th Cir.1978).

21. Similarly, in the antitrust context, Judge Shadur even in the absence of a statutory prohibition has nevertheless refused to enforce a waiver that purported to bar a lawsuit based on anticompetitive events arising after the signing of the waiver. Quoting a third Circuit case with approval, Judge Shadur stated:

> Any contractual provision which could be argued to absolve one party from liability for future violations of the antitrust statutes against another would to that extent be void as against public policy. . . .

*Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.,* 568 F.Supp. 1096, 1099 (N.D.Ill. 1983). Following the Third Circuit, Judge

Shadur concluded that such a waiver could itself become a contract in restraint of trade.

22. In the instant case, we are persuaded that a purported waiver of future, unknown federal intellectual property rights is unenforceable and void as against public policy. Such a waiver would permit a party to violate another's intellectual property rights with impunity in contravention of the clear and long standing public policies underlying the trademark, copyright and patent laws. Giving force to such waivers would invariably stifle creativity and inventiveness and inhibit inventors from presenting their creations to others. Thus, even if we were not to look at state law as a guide we would reach the same conclusion: The waiver of unknown future claims is unenforceable.

23. Playmates' New Product Form violates public policy because it allows Playmates to violate federal intellectual property law with impunity. Playmates' New Product Form also violates California law to which this Court may look in fashioning federal common law.

### CONCLUSION

For all of the reasons set forth herein the Court finds that Playmates' New Product Form is legally unenforceable under the facts and circumstances of this case. The Court therefore finds that defendant Playmates has not met its burden of establishing its affirmative defense of waiver. The trial will therefore proceed to Phase II on June 20, 1995 at 9:45 a.m.

# APPENDIX A

Minute Order Form   (rev. 12/90)

COPY

## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 93 C 2445 | Date | June 6, 1995 |
| Case Title | FASA Corp., etal v. Playmates Toys, Inc. | | |

**MOTION:**   [In the following box (a) indicate the party filing the motion, e g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented ]

**DOCKET ENTRY:**

(1)  Filed motion of [use listing in "MOTION" box above]

(2)  Brief in support of motion due _____

(3)  Answer brief to motion due _____ Reply to answer brief due _____

(4)  ☐ Ruling / Hearing  on _____ set for _____ at _____

(5)  Status hearing ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(6)  Pretrial conf ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(7)  Trial ☐ Set for ☐ re-set for _____ at _____

(8)  ☐ Bench Trial ☐ Jury Trial ☐ Hearing  held and continued to _____ at _____

(9)  This case is dismissed ☐ without ☐ with  prejudice and without costs ☐ by agreement ☐ pursuant to
☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)

(10) ☒ [Other docket entry]   Enter Trial Sequence and Timing Order.

(11) ☒ [For further detail see ☐ order on the reverse of ☒ order attached to  the original minute order form ]

| | | | number of notices | |
|---|---|---|---|---|
| ☐ No notices required, advised in open court | | | | |
| ☐ No notices required | | | | |
| ☐ Notices mailed by judge's staff. | | | date docketed | Document # |
| ☐ Notified counsel by telephone. | | | | |
| ☒ Docketing to mail notices | | | docketing dpty initials | |
| ☐ Mail AO 450 form | | | | |
| ☐ Copy to judge/magistrate Judge | | | date mailed notice | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing dpty initials | |

IN THE UNITED STATES
DISTRICT COURT

FOR THE NORTHERN DISTRICT
OF ILLINOIS

EASTERN DIVISION

FASA CORPORATION and
VIRTUAL WORLD ENTERTAINMENT,
Plaintiffs,

v.

PLAYMATES TOYS, INC.,
Defendant.

No. 93 C 2445

Judge Castillo

### TRIAL SEQUENCE AND TIMING ORDER

This Court, using its full discretionary powers as provided in the Federal Rules of Civil Procedure and Federal Rules of Evidence, and as superbly detailed by Judge Grady in *MCI Communications Corp. v. Am. Tel. & Tel. Co.*, 85 F.R.D. 28 (N.D.Ill.1979), sets forth the following sequence and timing order which shall control the trial of this case.

The trial will generally be divided into four sequences. To the extent necessary, the parties may call a witnesses in one or more sequence—but only if the witness will present evidence that is relevant to the particular sequence. During each trial sequence, the parties will be given an opportunity to give opening and closing arguments. Additionally, at the beginning of each trial sequence, the parties should submit a trial brief detailing the applicable legal standards governing that phase of the trial and the application of those standards to the facts of the case. The fourth sequence will relate to the issue of damages and will be tried, if necessary, on a date yet to be determined. The first three sequences of the trial will be tried commencing on June 19, 1995 at 9:45 a.m. in the following manner:

### Sequence One: The Affirmative Defense Waiver Issue

Phase One of the trial will be devoted to the issue of whether FASA is bound by the waiver of claims signed by Robert Allen.

The Court will devote the first day of the trial to this issue. Since Playmates has the burden of proof on this issue the Court will allow Playmates up to five (5) hours of testimony to meet its burden on this issue. FASA will be given up to three (3) hours of testimony to show the inadequacy of the waiver. The Court plans to rule on this issue before proceeding to Phases Two and Three of the trial.

### Sequence Two: FASA's Rights

This phase of the trial will be used to determine the validity and identification of FASA's alleged copyrights and trade dress rights. The copyright issues include: validity and ownership of copyrights in the works at issue; whether FASA has a valid license to use preexisting designs; whether the works include preexisting material that has been used unlawfully (17 U.S.C. § 103(a)); whether the works include preexisting material not covered by FASA's copyrights (17 U.S.C. § 103(b)); FASA's access to prior third-party designs; features standard in the "mecha" or giant warrior robot genre; features in the public domain; and the scope of FASA's copyrights. The trade dress issues involve identification of the trade dress at issue, functionality, secondary meaning and strength of FASA's trade dress rights, including BATTLETECH sales and advertising, concurrent third-party use, generic features, and FASA's secondary meaning survey evidence.

Since FASA has the burden of proof on this issue it will be given twenty (20) hours of testimony to present its case on this issue. Playmates will be given fifteen (15) hours of testimony to defend this issue.

After the Phase Two testimony has been completed, the Court may proceed to Phase Three, with or without ruling on the issues addressed in Phase Two. The Court will make every effort to issue a ruling, or tentative ruling, at the completion of Phase Two.

### Sequence Three: FASA's Infringement And Unfair Competition Claims

During this phase of the trial FASA will present its infringement and unfair competition claims in conformity with the prior rulings of the Court. Since FASA has the burden of proof on the issue it will be given

twenty four (24) hours to meet its burden on this issue. Playmates will be given fifteen (15) hours to defend this issue.

## *GENERAL GUIDELINES*

The above trial times mean "in-court/on trial" time. These trial times do not include any direct testimony presented by way of affidavit. These trial times do include argument and any presentation of testimony.

Any direct testimony sought to be presented by affidavit must be filed with the Court with copies of any referenced exhibits no later than twenty four (24) hours before that witness is presented to the Court for cross-examination. The parties are directed to treat this rule in a civil fashion by making as many trial affidavits as possible available pri-or to the commencement of trial or well in advance of the one-day deadline. Any objections to direct testimony by affidavit shall be made orally immediately before the witness is sworn in. The Court will rule prior to the commencement of cross-examination.

Except for Phase One, witnesses may be called out of order in order to comply with the witnesses' travel schedule and to reduce costs.

These guidelines have been set, and can only be modified, for the interests of justice, as determined by the Court.

ENTER:

/s/Ruben Castillo

Ruben Castillo

United States District Judge

June 6, 1995

# APPENDIX B

Minute Order Form    (rev. 12/90)

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 93 C 2445 | Date | June 9, 1995 |
| Case Title | FASA v. Playmates | | |

**MOTION:** [In the following box (a) indicate the party filing the motion  e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) Filed motion of [use listing in "MOTION" box above]

(2) Brief in support of motion due _____

(3) Answer brief to motion due _____ Reply to answer brief due _____

(4) ☐ Ruling / ☐ Hearing on _____ set for _____ at _____

(5) Status hearing ☐ held ☐ continued to ☒ set for ☐ re-set for  16 Jun. 95 at 9:00 a.m.

(6) Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(7) Trial ☐ Set for ☐ re-set for _____ at _____

(8) ☐ Bench Trial ☐ Jury Trial ☐ Hearing held and continued to _____ at _____

(9) This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to
☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)

(10) ☒ [Other docket entry]    In response to plaintiffs counsels' letter dated 6/8/95, and in conjunction with this Court's Trial Sequence and Timing Order, this Court hereby orders that both parties' proposed findings of fact and conclusions of law shall be divided into the four phases of the trial.  Both parties' proposed findings of fact and conclusions of law for each phase should be due on the prior business day preceding the beginning of each Phase of the trial.  Therefore, the Court orders that proposed findings of fact and conclusions of law for Phase I of the trial shall be filed with the court by 9:00 a.m. on June 16, 1995 during a status hearing which the court will hold in open court.

(11) ☐ [For further detail see ☐ order on the reverse of ☐ order attached to the original minute order form ]

| | | |
|---|---|---|
| ☐ No notices required, advised in open court | | number of notices |
| ☐ No notices required | | |
| ☐ Notices mailed by judge's staff | | date docketed |
| ☒ Notified counsel by telephone | | |
| ☐ Docketing to mail notices | | docketing dpty initials |
| ☐ Mail AO 450 form | | |
| ☐ Copy to judge/magistrate Judge | | date mailed notice |
| RO    courtroom deputy's initials | Date time received in central Clerk's Office | mailing dpty initials |

Document #