# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 01-11389

_____

VERONICA CHAPLIN, THOMAS HALL, FRANK ILLING,
STEPHEN KENDALL, GERHARD LEVERING,
JOHN DAVID THRONEBERRY,
AS AN INDEPENDENT EXECUTOR OF THE ESTATE OF RALPH THRONEBERRY,
SUBSTITUTED IN PLACE AND STEAD OF RALPH THRONEBERRY, DECEASED,
AND
STEPHEN BUCK,

Plaintiffs-Appellants,

VERSUS

NATIONSCREDIT CORPORATION AND BANK OF AMERICA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

October 8, 2002

Before SMITH and BENAVIDES, Circuit Judges, and FITZWATER,[*] District Judge.

JERRY E. SMITH, Circuit Judge:

The plaintiffs appeal a summary judgment adverse to their claim for employee benefits. Finding no error, we affirm.

I.

Plaintiffs Veronica Chaplin, Thomas Hall, Frank Illing, Stephen Kendall, Gerhard Levering, Ralph Throneberry,[1] and Stephen Buck worked as executives or managers at Nations-Credit Distribution Finance ("NCDF") until early 1998, when they lost their jobs because of a corporate reorganization. NationsCredit Corporation ("NationsCredit") and NCDF were subsidiaries of NationsBank Corporation; Bank of America is the successor to NationsBank Corporation.

NationsCredit established a severance pay plan in 1995 under the Employee Retirement Income Security Act of 1974 ("ERISA"), 11 U.S.C. § 1001 *et seq.* The plan granted severance benefits to "those full-time salaried employees in Salary Grades below Band C who are designated in writing by the Company's Director of Human Resources as eligible to participate in the Plan due to involuntary termination of his/her employment as a result of position elimination, position restructuring, lack of work, and/or the like." Plaintiffs and NationsCredit dispute whether plaintiffs were eligible employees under the

---

[*] District Judge of the Northern District of Texas, sitting by designation.

[1] Ralph Throneberry died after plaintiffs sued. His son, John Throneberry, has been substituted as the executor of his estate.

Plan in early 1998 when they lost their jobs because of the reorganization.

Neither side disputes that plaintiffs earned salaries below Band C and were involuntarily terminated. They disagree only whether plaintiffs were "designated in writing by the Company's Director of Human Resources as eligible to participate in the Plan." Plaintiffs contend they were designated as eligible employees by a memorandum dated September 25, 1995, with an attached copy of the summary plan description, and by a memorandum dated February 29, 1996, with an attached copy of an amendment to the summary plan description. NationsCredit responds that these documents do not designate plaintiffs as eligible employees and, in any event, NationsCredit terminated the plan in 1997 before plaintiffs became eligible.

Although they claimed eligibility under the plan, each plaintiff signed a Letter of Agreement between March 1998 and September 1998 releasing NationsCredit from all potential claims in exchange for severance benefits under non-ERISA guidelines adopted in January 1998 during the reorganization. A section of the Letter of Agreement entitled "Release of Claims" included the following language:

> [Y]ou hereby agree to release NCDF from any and all claims, suits, demands, or other causes of action of any kind . . . arising at any time in the unlimited past up to and including the date of your execution of this Letter of Agreement. This release includes any claims based in tort, contract or alleged violation of any federal, state or municipal statute, or ordinance. It includes, but is not limited to, all claims arising by reason of or in

any way connected with your employment relationship with NCDF . . . .

. . .

. . . You also acknowledge that any payment(s) made to you under the terms of this agreement are in addition to anything you are already legally entitled to receive from NCDF.

The severance benefits plaintiffs received in exchange for signing the release were less than they would have received under the plan if the plan was active in early 1998 and if plaintiffs in fact were eligible for benefits under the plan.

## II.

Notwithstanding this release, plaintiffs submitted claims for severance benefits under the plan to NationsCredit in January 1999.[2] NationsCredit denied the claims in March 1999, because plaintiffs had released it from all liability. Plaintiffs then appealed the denial to the plan administrator in April 1999. The administrator denied the appeal in September 1999. Plaintiffs then filed the instant action, making claims under ERISA and state law for wrongful denial of severance benefits offered in the plan and wrongful denial of their appeal to the administrator.[3]

NationsCredit moved for summary judgment on all of plaintiffs' claims, which the district court ultimately granted, but only after a motion to reconsider and a second memorandum opinion. In the first opinion, the court denied summary judgment on the ERISA claims and granted summary judgment on the state law claims.

First, the court found a genuine issue of material fact regarding plaintiffs' eligibility for the plan when they were terminated. Second, the court held that the releases did not bar suit because the releases were limited to "anything [plaintiffs] are already legally entitled to receive from NCDF," which could include severance benefits offered in the plan if plaintiffs proved at trial that they were in fact eligible employees when they were terminated. Third, the court found a genuine issue of material fact as to whether the plan administrator had denied plaintiffs' appeal for benefits in an arbitrary and capricious manner, because the court already had concluded that plaintiffs might have been eligible for benefits under the plan and that the releases did not bar the suit. Finally, the court held that ERISA's preemption clause, 29 U.S.C. § 1144(a), preempted plaintiffs' state law claims, and accordingly it granted summary judgment to NationsCredit on these claims.[4]

After a motion to reconsider, however, the court granted in whole NationsCredit's motion for summary judgment in a second opinion. The court did not disturb its earlier finding that plaintiffs "were potentially entitled to receive benefits under the 1995 plan." The court concluded, however, that it had committed a

---

[2] Appellant Buck did not submit a claim for benefits.

[3] NationsCredit also filed a counterclaim against plaintiffs for breach of contract, but the counterclaim is not before us on appeal.

[4] Plaintiffs alleged state common law claims of fraudulent inducement, unilateral contract, unjust enrichment, detrimental reliance, breach of fiduciary duty, equitable estoppel, mental anguish, and intentional and grossly negligent infliction of emotional distress.

clear error of law by holding that the releases would not bar plaintiffs' suit because plaintiffs and NationsCredit disputed plaintiffs' eligibility for the plan. Thus, even if plaintiffs had sued and ultimately prevailed on their underlying claim of eligibility for the plan, plaintiffs were not "already legally entitled to" severance benefits under the plan.

The district court therefore granted summary judgment to NationsCredit because the releases barred plaintiffs' suit. For the same reason, the court also concluded that the plan administrator could not have acted in an arbitrary and capricious manner, and therefore it granted summary judgment to NationsCredit on this claim as well. The court did not disturb its earlier holding that ERISA preempted plaintiffs' state law claims. Plaintiffs appeal the summary judgment on their claims for wrongful denial of benefits and wrongful denial of their appeal by the plan administrator.

### III.

We review a summary judgment *de novo* and apply the same standards as did the district court. *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A dispute about a material fact is "genuine" if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

The court must draw all reasonable inferences in favor of the non-moving party.

*Id.* at 255. To obtain summary judgment, "if the movant bears the burden of proof on an issue . . . because . . . as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the . . . defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

### IV.

NationsCredit bears the burden to prove that the releases bar plaintiffs' suit; it must establish that plaintiffs "signed a release that addresses the claims at issue, received adequate consideration, and breached the release." *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994). Neither side disputes that plaintiffs signed the releases or that, if the releases cover plaintiffs' claims for ERISA benefits and they received adequate consideration, they breached the release by suing. The parties disagree on, first, whether the releases cover plaintiffs' claims for ERISA benefits and, second, whether plaintiffs received adequate consideration for the releases. We agree with the district court that the releases cover plaintiffs' ERISA claims and that the plaintiffs received adequate consideration.

### A.

The parties disagree whether the language of the releases covers a claim for ERISA benefits. Plaintiffs contend that for a release to cover an ERISA claim, it must specifically mention ERISA. NationsCredit argues that a release need not specifically mention ERISA for its broad language to cover an ERISA claim.

We agree with NationsCredit that the language in the release sweeps widely enough to

cover plaintiffs' ERISA claim. Federal common law controls the interpretation of a release of federal claims. *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981). The terms of the releases unambiguously reveal an intent to cover every imaginable cause of action: "[Plaintiffs] hereby agree to release NCDF from *any and all* claims, suits, demands, or other causes of action *of any kind . . . arising at any time in the unlimited past . . .* [including] *all claims arising by reason of or in any way connected with [plaintiffs'] employment relationship* with NCDF. . . ." (Emphasis added.)

Although we have not expressly decided whether this kind of any-and-all language covers a claim for ERISA benefits, the reasoning of *Williams* strongly suggests that it does.[5] In *Williams*, the plaintiffs signed releases with similar any-and-all language. We held that the releases covered claims under the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. § 2101 *et seq.*, even though the releases did not specifically mention WARN. *Williams*, 23 F.3d at 936. We explained that "[t]here is no obligation under WARN or the common law for the defendants to mention WARN for the releases to be valid." *Id.*

Moreover, we cited two cases holding that this kind of any-and-all language covers a claim for ERISA benefits. *Id.* (citing *Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1117 (7th Cir. 1990); *Franz v. Iolab,*

*Inc.*, 801 F. Supp. 1537, 1543 (E.D. La. 1992)). Finally, plaintiffs cite no section of ERISA or any caselaw to suggest, much less to require, that, to cover an ERISA claim, a release must specifically mention ERISA.

The policy behind our holding in *Williams* also suggests that a release with sweeping any-and-all language should cover an ERISA claim, even if the release does not specifically mention ERISA. "Public policy favors voluntary settlement of claims and enforcement of releases." *Williams*, 23 F.3d at 935.[6] It would be an odd public policy that favored settlements and releases, but then forced employers to scour the United States Code and the state statutes and reports to identify every possible cause of action.

Such a rule would add needless transaction costs to settlements. Higher transaction costs, in turn, would discourage settlement in close cases by making settlement comparatively less attractive to the expected value of success on the merits.

These transaction costs could well be severe and widespread. Granted, frequent visitors to our courts might be indifferent to a rule requiring that releases specifically mention all possible causes of action. Their able lawyers could draft interminable releases for repeated use and thus consolidate and reduce the costs across cases. Yet, most litigants are, happily, not frequent visitors to the courts, and they lack the resources to obtain, in advance,

---

[5] Plaintiffs intimate that *Williams* is not good law after *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998). As we explain below, see *infra* Part IV.C, the holding in *Oubre* is extremely limited and in no way undermines the holding or the reasoning in *Williams*.

[6] A release of an employment or employment discrimination claim is valid only if it is "knowing" and "voluntary." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n.15 (1974). Plaintiffs do not argue that they signed the releases under duress or otherwise without knowledge or involuntarily.

punctilious release language for every possible situationSSeven if they were on notice that they might need it. Moreover, even repeat litigants would place a lower value on settlements in general, because the contingencySShowever slightSSwould remain that they would miss a possible cause of action.

This unknowable contingency will always reduce the expected value of settlement and will further discourage settlement. In contrast, a rule allowing litigants to settle all claims with a plain and simple statement that the release covers any and all claims reduces transaction costs, puts sophisticated and unsophisticated litigants alike on equal footing, and adds certainty to settlement negotiations and agreements. The kind of sweeping any-and-all language contained in these releases not only promotes swift, inexpensive, and comprehensive settlement of all disputes, but also adequately notifies plaintiffs that they are releasing all possible claims.

In short, a general release of "any and all" claims applies to all possible causes of action, unless a statute specifically and expressly requires a release to mention the statute for the release to bar a cause of action under the statute. ERISA contains no such requirements. The releases therefore cover plaintiffs' claims for ERISA benefits.

### B.

The only remaining question under *Williams* is whether plaintiffs received adequate consideration for the releases. We conclude that they did.

The adequacy of the consideration depends on plaintiffs' eligibility for the plan. A clause in the releases appears to limit the scope of the releases if plaintiffs were eligible for the plan.

"[Plaintiffs] also acknowledge that any payment(s) made to [plaintiffs] under the terms of this agreement are in addition to anything you are *already legally entitled to receive* from NCDF." If plaintiffs were "already legally entitled to receive" severance benefits under the plan, then the smaller severance package they received in exchange for the releases cannot be adequate consideration.

The parties, naturally enough, dispute plaintiffs' eligibility. The plan covered "those full-time salaried employees in Salary Grades below Band C who are designated in writing by the Company's Director of Human Resources as eligible to participate in the plan due to involuntary termination of his/her employment as a result of position elimination, position restructuring, lack of work, and/or the like." The parties do not disagree that plaintiffs earned salaries below Band C and were involuntarily terminated. They contest only whether plaintiffs were "designated in writing by the Company's Director of Human Resources as eligible to participate in the plan."

Plaintiffs contend that the memoranda of September 25, 1995, and February 29, 1996, designated plaintiffs as eligible employees. NationsCredit denies this assertion and contends that plaintiffs could be designated as eligible employees only when they lost their jobs, by which time NationsCredit already had terminated the plan. As the district court found in its first opinion and did not reconsider in its second, these arguments raise a genuine issue of material fact that cannot be resolved on summary judgment.

Perhaps plaintiffs would have proven their eligibility for the plan if they had not signed the releases and instead had taken their underlying ERISA claims to trial; but perhaps not. That

is a story whose ending we shall never know, because plaintiffs signed the releases. By doing so, they surrendered their disputed right to a larger payment for a certain right to a smaller payment, which is to say, they received adequate consideration for the releases.

The district court correctly held, on reconsideration, that *O'Hare v. Global Natural Res., Inc.*, 898 F.2d 1015, 1016 (5th Cir. 1990), compels this result.[7] In *O'Hare*, the plaintiff's employment contract entitled him to benefits if fired without cause, but no benefits if fired with cause. *Id.* at 1016. The employer fired plaintiff with alleged cause, but plaintiff disputed the alleged cause. *Id.* The plaintiff, however, signed a release of all claims in exchange for some benefits, though less than he would have received if he had been fired without cause. *Id.* Plaintiff then sued for alleged age discrimination and for the benefits he would have received if fired for cause. *Id.* He argued that the release was invalid for lack of consideration, because he was already entitled to receive the benefits under his employment contract. *Id.* at 1017.

We rejected this argument: "O'Hare gave up a disputed right to the benefits he would have received had he been discharged without cause for an undisputed right to a smaller package of benefits." *Id.* The facts and the holding of *O'Hare* are indistinguishable from this case.

As the district court explained in its second opinion, "plaintiffs were given a choice: to ac-

cept severance benefits at the time of their termination and sign a Release, or to wait and dispute their eligibility under the 1995 plan. Without exception, plaintiffs chose to take the severance benefits when offered at the time of their termination." They cannot complain now that the severance package they freely accepted in lieu of protracted litigation over plan benefits is inadequate consideration.

C.

Plaintiffs mount one final assault on the releases, namely, that the releases do not conform to the Older Workers Benefits Protection Act ("OWBPA"), 29 U.S.C. § 626(f). Congress adopted the OWBPA as an amendment to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, to ensure that workers did not carelessly waive a potential ADEA claim. *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426-27 (1998). "The OWBPA implements Congress' policy via a strict, unqualified statutory stricture on waivers," *id.* at 427, that requires a release to contain certain elements, for example, a specific mention of the ADEA and encouragement to consult a lawyer, for the release to be valid against an ADEA claim.

Plaintiffs apparently think the OWBPA creates a general law of releases for all federal claims, but they could not be more plainly wrong. One need only cursorily examine the text of the OWBPA to see that it applies only to ADEA claims. The OWBPA states that "[a]n individual may not waive any right or claim *under this chapter* unless the waiver is knowing and voluntary." 29 U.S.C. § 626-(f)(1) (emphasis added). The phrase "this chapter" in the OWBPA refers to chapter 14 of title 29 of the United States Code, i.e., the ADEA.

---

[7] The district court granted NationsCredit's motion to reconsider precisely because the court had overlooked *O'Hare* in its first opinion and hence had committed a clear error of law under Fifth Circuit precedent.

The Supreme Court recognized this obvious point and the very limited scope of the OWBPA in *Oubre*. The Court rejected, in *Oubre*, an employer's argument that the common law defenses of ratification and tender back survived the OWBPA. In the process, the Court repeatedly stated that the OWBPA applies only to ADEA claims, and no others.

The Court explained, for example, that "[t]he text of the OWBPA forecloses the employer's defense, notwithstanding how general contract principles would apply to non-ADEA claims." 522 U.S. at 427. Likewise, the Court expressly conceived a case in which a release might bar all claims but an ADEA claim because the release did not comply with the OWBPA. "[T]hese questions may be complex where a release is effective as to some claims but not as to ADEA claims." *Id.* at 428.

The Court noted the very limited scope of the OWBPA in many other passages, as well.[8] The language of *Oubre* precludes plaintiffs' argument that the OWBPA applies to a release of an ERISA claim.

---

[8] *See Oubre*, 522 U.S. at 426-27 ("The statutory command is clear: An employee 'may not waive' an ADEA claim unless the waiver or release satisfies the OWBPA's requirements."); *id.* at 427 ("An employee 'may not waive' an ADEA claim unless the employer complies with the statute."); *id.* ("The OWBPA sets up its own regime for assessing the effect of ADEA waivers, separate and apart from contract law."); *id.* ("The OWBPA governs the effect under federal law of waivers or releases on ADEA claims"); *id.* at 428 ("As a statutory matter, the release cannot bar her ADEA suit, irrespective of the validity of the contract as to other claims."); *id.* ("It suffices to hold that the release cannot bar the ADEA claim"); *id.* ("The statute governs the effect of the release on ADEA claims").

Perhaps even more important than the language of *Oubre* is the reasoning behind its holding. The OWBPA does not mention the common law defenses of ratification and tender back. The Court concluded, however, that the OWBPA displaced the common law of releases, including these defenses, as to ADEA claims. 522 U.S. at 427. The Court anchored this conclusion in the comprehensive nature of the OWBPA, which to the Court evinced a congressional intent for the OWBPA to displace the common law and to create "its own regime for assessing the effect of ADEA waivers, separate and apart from contract law." *Id.*

This reasoning drastically limits the scope of *Oubre*. If *Oubre* extends beyond OWBPA and ADEA claimsSSand we strongly doubt it doesSSit extends only to federal statutes with an equally comprehensive regulation of releases. As we explained in *Williams*, in which we held that the OWBPA does not apply to WARN, the OWBPA "is a change from the common law, and there is no similar obligation imposed on employers under WARN." 23 F.3d at 936. Likewise, ERISA does not regulate releases at all, so neither the OWBPA nor *Oubre* applies to the releases of plaintiffs' ERISA claims.

V.

The district court held, in its first opinion, that the ERISA preemption clause, 29 U.S.C. § 1144(a), preempts plaintiffs' state law claims. The court did not disturb this holding in its second opinion. Plaintiffs argue that the court erred, because they cannot be both ineligible for plan benefits and have their state law claims preempted. According to plaintiffs, if they are ineligible for plan benefits because the plan expired or was terminated before they lost their jobs, then the plan no longer exists to

preempt their state law claims. NationsCredit, on the other hand, reasons that even an expired or terminated ERISA plan retains its preemptive effect.

We need not reach the question of ERISA preemption, because we may affirm on much simpler grounds: The releases bar the state law claims. The Texas law of releases is similar to this court's standards explained in this opinion. Under Texas law, "a release must mention the claim to be effective." *See Keck v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 698 (Tex. 2000). Texas law does not, however, "require that the parties anticipate and identify each potential cause of action relating to the release's subject matter." *Id.*

The releases expressly cover "any claims based in tort [or] contract . . . [and] includes, but is not limited to, all claims arising by reason of or in any way connected with your employment relationship with NCDF." Plaintiffs' state law claims sound in tort or contract and are directly connected to plaintiffs' employment at NDCF. These claims therefore fall within the subject matter of the releases, and thus the releases bar the state law claims under Texas law.

AFFIRMED.