## In re ELECTRONIC DATA SYSTEMS CORP. "ERISA" LITIGATION.

No. 6:03–MDL–1512.
Civ. No. 6:03–CV–126.

United States District Court,
E.D. Texas,
Tyler Division.

Nov. 8, 2004.

See, also, 305 F. Supp.2d 658.

Howard Shapiro, Robert Rachal, Shook Hardy & Bacon, New Orleans, LA, G. Irvin Terrell, Baker Botts, LLP, Houston, TX, William H. Gray, III, Coleman, Sloman & Blumenthal, LLP, Dallas, TX, for Defendants.

Barry C. Barnett, Jonathan, Susman Godfrey LLP, Dallas, TX, Lynn Sarko, Elizabeth A. Leland, Keller, Rohrback LLP, Seattle, WA, E. Glenn Thames, Jr., Potter Minton, PC, Tyler, TX, Gary Gotto, Keller, Rohrback, Phoenix, AZ, Robert A. Izard, Schatz & Noble, Hartford, CT, Jeffrey S. Abraham, Abraham & Associates, New York City, James D. Baskin, III, The Baskin Law Firm, Austin, TX, for Plaintiffs.

## PRACTICE AND PROCEDURE ORDER NO. 17

### (ERISA LITIGATION)

DAVIS, District Judge.

Before the Court are Plaintiffs' Motion for Class Certification and Brief in Support, Defendants' Opposition to the Motion to Certify the Securities Act Claim as a Class Action, EDS Defendants' and Board Committee Defendants' Opposition to ERISA Plaintiffs' Motion for Class Certification on the ERISA Fiduciary Claims, Plaintiffs' Reply, and EDS Defendants' and Board Committee Defendants' Sur–Reply (Docket Nos. 130, 138, 139 in 6:03–md–1512 and Docket Nos. 79, 85, 86, 99, 94 in 6:03–cv–126 respectively). Having considered the parties' written submissions and their oral arguments, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for Class Certification.

### BACKGROUND[1]

Electronic Data Systems Corporation is a world-wide information technology services provider. Plaintiffs are current and former EDS employees who are or were participants in, or beneficiaries of, EDS's 401(k) plan. Defendants are EDS, EDS's Chief Executive Officer ("CEO Defendant"), the EDS Compensation and Benefits Committee and its members ("CBC Defendants"),

---

1. More information about the facts of this case can be found in the Court's Practice and Procedure Order No. 5 denying Defendants' motions to dismiss under the Plaintiffs' First Amended Complaint. See *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F.Supp.2d 658 (E.D.Tex. 2004). Currently, Plaintiffs' Second Amended Consolidated Class Action Complaint is the live pleading in this case.

EDS's Benefits Administration Committee and its members ("BAC Defendants"), and EDS's Investment Committee and its members ("IC Defendants") (collectively "Defendants").

EDS sponsored a 401(k) retirement plan (the "Plan"), which is an "eligible individual account plan" under ERISA. The Plan allowed EDS employees to contribute up to twenty percent of their income into one or more various investment options.[2] The EDS Stock Fund, which invested up to 99 percent of its assets in EDS stock, was one of the offered investment options. Whenever EDS made matching contributions to employee investments, the matching contributions were invested in the EDS Stock Fund and were required to remain in the EDS Stock Fund for two years. Plaintiffs allege that during the class period the EDS Stock Fund represented over 20.8 percent of the Plan's total assets.

On September 18, 2002, EDS issued a press release announcing that its earlier estimate of a four to six percent revenue increase was incorrect, and that the company would actually suffer a two to five percent revenue decrease. Also, EDS announced that the expected $.74 earnings per share for third quarter 2002 would actually be $.12–$.15 per share. The next day, Plaintiffs allege "EDS's stock price plummeted over fifty percent to close at $17.20, wiping out some $8 billion in market value, including significant Plan value for shares held by Plan participants and beneficiaries in the EDS Stock Fund." Because of Defendants' access to company information, Plaintiffs allege that Defendants should have foreseen the September 19, 2002 drop in EDS stock price, which allegedly harmed Plaintiffs' Plan interests.

In their Second Amended Consolidated Class Action Complaint ("Complaint"), Plaintiffs bring five claims against Defendants. In the first four counts, Plaintiffs allege that Defendants breached their fiduciary duties with respect to the Plan's holding of EDS stock. Plaintiffs seek to force Defendants to make good to the Plan the losses the Plan suffered as a result of Defendants' alleged fiduciary breaches. Plaintiffs bring this civil enforcement action under section 502 of ERISA. *See* 29 U.S.C. § 1132. In their last claim, Plaintiffs allege that Defendants violated the Securities Act by issuing unregistered EDS stock to the Plan. Plaintiffs seek certification of a subclass of Plaintiffs (the "Rescission Subclass") and seek rescission of the unregistered stock purchases. Plaintiffs bring this claim under section 12 of the Securities Act of 1933. *See* 15 U.S.C. § 77*l*(a)(1). Plaintiffs now seek to certify these claims as a class action. Proposed class representatives for all claims are Jeffery Smith and Richard Mizell. Smith is a former EDS employee, and Mizell is a current EDS employee.

*The Fiduciary Claims*

In the first four counts, Plaintiffs allege that Defendants breached their fiduciary duties in managing the Plan. As to Counts 1–4, Plaintiffs seek to certify a class defined as: "All participants in the Plan and their beneficiaries, excluding the Defendants, for whose accounts the Plan made or maintained investments in EDS stock through the EDS Stock Fund between September 7, 1999 and the present."

In Count 1, Plaintiffs allege that Defendants breached their fiduciary duties by failing to prudently manage Plan assets. Specifically, Plaintiffs allege that Defendants breached their fiduciary duties of prudence when, despite knowledge of EDS's financial problems, Defendants: (1) offered EDS stock as a Plan investment option, (2) directed and approved investment in EDS stock rather than in safer alternative investments, (3) invested matching funds in EDS stock rather than in safer alternative investments, (4) failed to take adequate steps to prevent the Plan from suffering losses from investments in EDS stock, and (5) failed to implement any strategy to compensate for the EDS stock's high risk as a Plan investment.

In Count 2, Plaintiffs allege that Defendants breached their fiduciary duties by failing to appropriately monitor the BAC and IC Defendants and by failing to provide the BAC and IC Defendants with accurate infor-

---

**2.** This limit was raised to forty percent effective May 31, 2003.

mation. Plaintiffs claim that EDS, the CBC Defendants, and the CEO Defendant breached their fiduciary monitoring duties by "failing to ensure that the monitored fiduciaries had access to knowledge about the Company's business problems ..., which made Company Stock an imprudent retirement investment" and by "failing to ensure that the monitored fiduciaries appreciated the huge risk of significant investment by rank and file employees in an undiversified employer stock fund." In addition, Plaintiffs allege that EDS, the CBC Defendants, and the CEO Defendant failed to disclose accurate information about EDS's financial status to the BAC and IC Defendants as the duty to monitor required.

In Count 3, Plaintiffs allege that Defendants breached their fiduciary duties by failing to provide Plan participants and beneficiaries complete and accurate information regarding EDS stock, EDS's accounting and business improprieties, and the stock value's consequent artificial inflation, and by conveying inaccurate information about EDS stock's soundness and the prudence of investing retirement contributions in the stock. Plaintiffs allege that Defendants, as fiduciaries, knowingly offered Plaintiffs, as their beneficiaries, an unsound investment and concealed information that would have allowed Plaintiffs to discover that the investment was unsound.

In Count 4, Plaintiffs allege that Defendants breached their duty of loyalty to discharge their duties with respect to the Plan solely in the participants' and beneficiaries' interests and for the exclusive purpose of providing benefits to the participants and beneficiaries. Plaintiffs allege that during the proposed class period, Defendants were both Plan fiduciaries and EDS corporate officers and had conflicting duties to the company and the Plan. Plaintiffs allege that Defendants breached their duty of loyalty to the Plan and its participants and beneficiaries by continuing to offer EDS stock as a Plan investment, failing to hire independent fiduciaries or advisors who did not face the same conflicts of interest, and failing to take any other necessary steps to eliminate their conflicts of interest.

As to Counts 1–4, Plaintiffs allege that the Plan, and indirectly the Plaintiffs and other Plan participants and beneficiaries, suffered significant losses as a direct and proximate result of the Defendants' breaches of fiduciary duties. Pursuant to ERISA sections 502(a)(2) and 409, Plaintiffs allege that Defendants are liable to restore to the Plan its losses caused by Defendants' breaches. *See* 29 U.S.C. §§ 1132(a)(2), 1109(a). As additional relief to Count 4, Plaintiffs seek to obligate Defendants to appoint one or more independent fiduciaries to protect Plan participants and beneficiaries in the future.

Counts 1, 2, and 4 (the "Prudence Claims") generally involve allegations that Defendants breached their fiduciary duties by how Defendants treated or managed the Plan. This is in contrast to Count 3 (the "Misrepresentation Claim") in which Plaintiffs allege that Defendants breached their fiduciary duties by how Defendants treated Plaintiffs as Plan participants and beneficiaries. Because of the evidentiary differences this subtle distinction will create at trial, the Court will analyze separately whether the Prudence Claims and the Misrepresentation Claim are suitable for class certification.

*The Rescission Claim*

In Count 5, Plaintiffs allege that EDS issued unregistered EDS stock to the Plan violating section 5 of the Securities Act. *See* 15 U.S.C. § 77e(a)(2). On behalf of the Rescission Subclass, Plaintiffs bring a claim under Securities Act section 12(a)(1) seeking rescission of all unregistered stock purchases by the Plan or for Plan participants' or beneficiaries' benefit. Plaintiffs seek to recover consideration paid for the EDS stock that was purchased for their Plan accounts during the Rescission Class Period, less any income derived from the stock. Alternatively, Plaintiffs seek to recover damages for class members who no longer hold EDS stock in their accounts. Plaintiffs define the Rescission Subclass as: "All participants in the Plan and their beneficiaries, excluding the Defendants, for whose accounts the Plan purchased EDS stock through the EDS Stock Fund between October 20, 2001 and November 18, 2002, inclusive."

## PARTICIPANT LOSSES VERSUS PLAN LOSSES

Plaintiffs generally allege that they are authorized to bring their ERISA claims under ERISA sections 409(a) and 502(a)(2) and (3).[3] *See* 29 U.S.C. §§ 1109, 1132(a)(2), (3). In Counts 1–4, Plaintiffs claim they are seeking relief pursuant to ERISA section 502(a)(2). Section 502(a) authorizes civil actions brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109 imposes personal liability on breaching fiduciaries

> to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). Relief sought under ERISA section 502(a)(2) inures to the benefit of the plan as a whole rather than to the benefit of individual plan participants. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140–142, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Matassarin v. Lynch*, 174 F.3d 549, 566 (5th Cir.1999) ("The Supreme Court, noting ERISA's primary concern with the possible misuse or poor management of plan assets, has stated that the 'loss to the plan' language in [29 U.S.C.] § 1109 [ERISA section 409] limits claims to those that inure to the benefit of the plan as a whole and not to the benefit only of individual plan beneficiaries."). ERISA section 502(a)(3) authorizes civil actions "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice

which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter." 29 U.S.C. § 1132(a)(3). A participant may bring a section 502(a)(3) claim based on a loss to the individual participant or based on a loss to the plan as a whole. *Matassarin*, 174 F.3d at 566. Claims that concern only certain participants' plan accounts, rather than the plan as a whole, are properly brought under section 502(a)(3) rather than 502(a)(2). *See id.* (affirming summary judgment dismissing a section 502(a)(2) claim for a fiduciary breach that affected a limited number of plan participants).

Throughout their briefing, Defendants indicate that they believe Plaintiffs' claims are brought under ERISA section 502(a)(3) rather than section 502(a)(2), and many of their objections to certification are based on that understanding. The Court, however, reads Plaintiffs' Complaint to show that Plaintiffs bring their claims primarily under section 502(a)(2), although Plaintiffs also generally state they also bring their claims under section 502(a)(3).[4] The Prudence Claims, which allege fiduciary breaches in how Defendants managed the Plan, are properly brought under ERISA section 502(a)(2). The Misrepresentation Claim is more properly brought under section 502(a)(3) because it is only applicable to those participants who invested in the EDS Stock Fund because of Defendants' misrepresentations. The Court does not raise this issue to improperly examine the merits of Plaintiffs' claims, but because this distinction becomes important as the Court analyzes whether Plaintiffs have satisfied the certification requirements.

---

**3.** In their Complaint, Plaintiffs state generally that they bring their claims under sections 502(a)(2) and (a)(3), but, when discussing their specific claims, state they are brought under section 502(a)(2). In their briefing, Plaintiffs indicate that they are moving to certify their claims on behalf of the Plan, but, at the class certification hearing, Plaintiffs also indicated that the Misrepresentation Claim is an (a)(3) claim. *Compare* Plaintiffs' Reply to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class Certification at 4–8 *with* Transcript at 59,

63("'(a)(3) is the nondisclosure/misrepresentation claim, the count three claim. That is the only one that fits under (a)(3) as opposed to (a)(2). . . . Our claim is that we have an (a)(2) claim and an (a)(3) claim and it is all on a class-wide basis.''). Under these facts, the Court concludes that the Misrepresentation Claim is brought under section 502(a)(3).

**4.** *See* Second Amended Consolidated Class Action Complaint ¶ 1, 6, 37, 210.

## STANDARD OF REVIEW

The district court maintains great discretion in certifying a class action, which is essentially a factual inquiry. *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 502 (5th Cir.2004). The district court has inherent power to manage and control pending litigation. *Id.* at 503 (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 414 (5th Cir. 1998)). In deciding whether to certify a class, a court should consider how the plaintiffs' claims will be tried. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996). While a court should not reach the case's merits, the court must understand the facts, claims, defenses, and substantive law to make a meaningful certification determination. *Id.* An action may be brought or certified as a class action with respect to particular issues, or a class may be divided into subclasses, which will each be treated as a class. FED. R. CIV. P. 23(c)(4). Each subclass must meet the class certification requirements. *Vizena*, 360 F.3d at 502. The party seeking certification must demonstrate that Rule 23(a)'s four requirements are met. *Id.* That party must also show that at least one of Rule 23(b)'s three requirements is met. *Id.* If Rule 23's requirements are not met, the class should not be certified. *Id.* The district court must detail with sufficient specificity how Rule 23's requirements have been satisfied. *Id.* A district court's decision to certify a class will be upheld unless the court abused its discretion in doing so or applied incorrect legal standards to reach its decision. *Id.*

## FEDERAL RULE OF CIVIL PROCEDURE 23(a)

Rule 23(a) requires that (1) the class be so numerous that joinder of all members is impracticable [numerosity], (2) there be questions of law or fact common to the class [commonality], (3) the claims or defenses of the representative parties be typical of the claims or defenses of the class [typicality], and (4) the representative parties fairly and adequately protect the interests of the class [adequacy].

---

**5.** As to the Rescission Claim, Defendants only challenge certification on Rule 23(a)(4)'s adequa-

*James v. City of Dallas*, 254 F.3d 551, 569 (5th Cir.2001).

### Rule 23(a)(1)-Numerosity

■ The numerosity prong is satisfied if plaintiffs demonstrate some evidence or a reasonable numerical estimate of purported class members. *Id.* at 570. Defendants do not challenge any claim's certification based on numerosity.[5]

### 1. The Prudence and Misrepresentation Claims

Plaintiffs allege that as of May 2002 the Plan had more than 61,000 participants. EDS's matching contributions were made strictly to the EDS Stock Fund. Thus, plaintiffs allege, virtually all participants are likely to have held an interest in the EDS Stock Fund and be class members. The Courts finds that the class satisfies the numerosity requirement.

### 2. The Rescission Claim

Plaintiffs allege that because the Plan caused the EDS Stock Fund to purchase the stock at issue on the participants' behalf, most participants are likely class members. The Court finds this estimate reasonable and that the numerosity requirement is satisfied as to the Rescission claim.

### Rule 23(a)(2)-Commonality

Commonality is satisfied if plaintiffs demonstrate there are questions of law or fact common to the class. *Id.* This requirement is not demanding and is satisfied if at least one issue's resolution will affect all or a significant number of class members. *Id.* Some plaintiffs having different claims or that claims require some individualized analysis does not defeat commonality. *Id.* Defendants do not object directly to Plaintiffs' assertions regarding commonality but instead address their objections to the typicality and adequacy requirements.

cy requirement.

### 1. The Prudence Claims

█ Plaintiffs allege the following as common questions regarding the Prudence Claims: whether Defendants were the Plan's and the participants' fiduciaries; whether Defendants breached any fiduciary duties by offering the EDS Stock Fund as an investment; whether Defendants breached any fiduciary duties by making and maintaining Plan investments in the EDS Stock Fund; whether EDS and the CBC Defendants breached any fiduciary duties by failing to appropriately monitor the BAC and IC Defendants; whether Defendants breached their fiduciary duty to avoid conflicts of interest and promptly resolve such conflicts by continuing to offer the EDS Stock Fund as a Plan investment option and by failing to engage independent fiduciaries or advisors to evaluate the prudence of the Plan's investments; whether some Defendants' breaches enabled other Defendants to also breach; whether Defendants failed to make reasonable efforts to remedy the breaches; and whether the Plan and its participants suffered losses as a result of the Defendants' fiduciary breaches.

### 2. The Misrepresentation Claim

Regarding the Misrepresentation Claim, Plaintiffs allege the following as common questions: whether Defendants were the Plan's and the participants' fiduciaries; whether Defendants breached any fiduciary duties by failing to provide participants with complete and accurate information about EDS's well-being and the appropriateness of investment in the EDS Stock Fund; whether some Defendants' breaches enabled other Defendants to also breach; whether Defendants failed make reasonable efforts to remedy the breaches; and whether the Plan and its participants suffered losses as a result of the Defendants' fiduciary breaches.

### 3. The Rescission Claim

█ As common questions involved in the Rescission Claim, Plaintiffs allege: whether EDS offered to sell, sold, and delivered unregistered EDS stock and whether Plaintiffs are entitled to rescind purchases of EDS stock.

Commonality is not a difficult requirement to satisfy, and the Court finds Plaintiffs have adequately alleged sufficient common questions of law or fact among class members as to their Prudence, Misrepresentation, and Rescission Claims.

### Rule 23(a)(3)-Typicality

The typicality test is also not demanding and is satisfied if the class representatives' claims or defenses are typical of the class's claims or defenses. *Id.* at 571. Typicality focuses on the similarity between the representatives' and the class members' legal and remedial theories. *Id.* Typicality does not require complete identity of claims, but requires that the representatives' claims share the same essential characteristics with the class members' claims. *Id.* Factual differences do not defeat typicality if the claims arise from a similar course of conduct and share the same legal theories. *Id.*

### 1. The Prudence Claims

█ Defendants oppose the Prudence Claims' typicality on several grounds.[6] First, Defendants argue that Mizell's and some absent class members' conduct conflicts with other class members' and with the claims they are asserting. Specifically, Defendants contend that because some class members, including Mizell, continue to invest assets in the EDS Stock Fund, they are in conflict with the claim that the Fund is an imprudent Plan investment. Second, Defendants argue that each class member had a unique trading pattern of their Fund assets and so made and lost money at different points in time. Defendants argue that these differences create claims conflicts within the class regarding when the Fund became an imprudent investment. Third, Defendants argue that some absent class members

---

**6.** From Defendants' briefing, it is not always clear which objections Defendants raise to which claims and which 23(a) requirement. Defendants raise some objections to multiple claims and multiple requirements. Plaintiffs assert that many of Defendants' objections to Rule 23(a)'s requirements are more properly brought as objections to Rule 23(b)(3)'s predominance requirement. The Court will address the main objections without being repetitive.

signed releases as a condition of their severance packages and these releases defeat both the typicality and adequacy requirements. Fourth, Defendants assert that the affirmative defense created in ERISA section 404(c) requires individualized determinations to establish its applicability. *See* 29 U.S.C. § 1104(c).

### a. Claims and Conduct Conflicts

Defendants' first and second objections miss the point that Plaintiffs have filed a derivative-type suit. Plaintiffs are not asserting claims for their own individual accounts' losses. Plaintiffs have filed suit on the Plan's behalf alleging that Defendants' conduct harmed the Plan as a whole and seeking recovery on the Plan's behalf. *See Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1462 (9th Cir.1995) ("Although this suit may be characterized as 'derivative' in the broad sense, it clearly does not fall within the terms of Rule 23.1"). There can be no conduct or claims conflicts because each class member is bringing suit on the Plan's behalf, not as an individual. In effect, class members, as the Plan's advocates, are each bringing the exact same suit. Although the Plan is a separate legal entity that can sue and be sued, it cannot sue fiduciaries for breach of their duties. *See* 29 U.S.C. § 1132(a), (d); *Bowles v. Reade*, 198 F.3d 752, 760–61 (9th Cir.1999) (reiterating an earlier holding that ERISA plans are not entitled to sue for breach of fiduciary duty under ERISA). The Plan is dependent on someone else bringing such claims on its behalf. *See* 29 U.S.C. § 1132(a) (authorizing only participants, beneficiaries, fiduciaries, and the Secretary of Labor to bring civil actions on a plan's behalf). ERISA section 509(a) limits breach-of-fiduciary-duty claims under ERISA section 502(a) to those that inure to the Plan's benefit as a whole and not to any individual participant's benefit. 29 U.S.C. §§ 1109, 1332(a)(2); *Matassarin*, 174 F.3d at 566. Thus, there can be no conduct or claims conflicts among Plaintiffs or between Plaintiffs and the Plan.

### b. Releases

■ In the course of accepting severance benefits during company-wide layoffs, thousands of absent class members signed releases agreeing not to sue Defendants. Defendants maintain that typicality is destroyed because the releases' enforceability must be litigated and because Smith and Mizell, who did not sign releases, are inadequate to represent class members who signed a release.

A general release of "any and all" claims applies to all possible causes of action, unless a statute specifically and expressly requires such a release to mention the statute in order to bar claims under the statute. *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372–73 (5th Cir.2002). ERISA does not contain such a requirement, and a general release can bar claims under ERISA. *Id.* Plaintiffs do not dispute that some class members signed releases that included the following provisions:

> Employee agrees to release EDS [all Defendants] from all claims or demands Employee may have against EDS, including, but not limited to, any claims related to Employee's employment with EDS or separation from that employment.... This Release includes, without limitations, a release of any rights or claims Employee may have under [various federal antidiscrimination statutes] or any other federal, state, or local laws or regulations that in any way relate to the employment of individuals and/or prohibit employment discrimination in any form. This Release also includes, without limitation, a release by Employee of any related or unrelated wrongful discharge claims, contractual claims, tort claims or any other actions. This Release covers both claims that Employee knows about and those he/she may not know about.
>
> This Release does not include, however, a release of Employee's right, if any, to benefits he/she is entitled to under any EDS plan qualified under Section 401(a) of the Internal Revenue Code, including the EDS Retirement Plan and the EDS 401(k) Plan, and COBRA benefits pursuant to Internal Revenue Code section 4980B.

Defendants are correct that individual determinations of the release's applicability would defeat typicality and make this case unsuitable for class certification, but the release's

plain language appears not to bar absent members' claims. Further, as discussed above, the releases are inapplicable to the Prudence Claims because Plaintiffs have brought this action on the Plan's behalf and do not advance individual claims, to which the releases may be applicable.[7] This distinguishes the circumstances in *Chaplin*, and many other cases, where after signing releases plaintiffs brought suit to advance individual claims, such as claims for benefits. Because Plaintiffs are asserting causes of action on the Plan's behalf, rather than their own individual causes of action, they are not subject to defenses Defendants may have against them individually. For these reasons, the Court finds the releases do not defeat the typicality requirement.[8]

### c. *ERISA section 404(c)*

■ ERISA section 404(c) creates an affirmative defense to liability for losses caused by a participant's exercise of control over the assets in his account. Defendants argue that the defense's applicability necessitates individual determinations of control and therefore Plaintiffs cannot satisfy the typicality requirement because some class members may have exercised control while others did not.[9] Plaintiffs claim that section 404(c)'s applicability can be determined on a class-wide basis.

7. The Court does have concerns that those employees, including Smith, who have left EDS may not have standing to bring these claims regardless of whether they signed a release. Under ERISA section 502(a)(2), a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary." 29 U.S.C. § 1132(a)(2). "The term 'participant' means any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan...." 29 U.S.C. § 1002(7). The Court is unclear whether EDS's former employees still qualify as "participants" under *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345 (5th Cir.1989). The Court invites further briefing on this issue. This concern is inapplicable to the Rescission Claim, which Plaintiffs bring under the Securities Act. Although standing goes to the Court's subject matter jurisdiction, the Court believes this Practice and Procedure Order is properly issued as the Court has no reason to believe that Mizell and the other absent class members lack standing.

The relevant portion of ERISA section 404(c) provides:

(1) In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary)—

(A) such participant or beneficiary shall not be deemed to be a fiduciary by reason of such exercise, and

(B) no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control.

29 U.S.C. § 1104(c).

Section 404(c) only applies to losses that "result from" the participant's exercise of control. *See* 29 U.S.C. § 1104(c)(1)(B); *In re Enron Corp. Securities, Derivative & "ERISA" Litig.*, 284 F.Supp.2d 511, 578 (S.D.Tex.2003); *see* Final Regulation Regarding Participant Directed Individual Account Plans (ERISA Section 404(c) Plans), 57 Fed.Reg. 46906, 46924 (final rule Oct. 13, 1992) ("Given the transactional nature of the relief provided by section 404(c), it is necessary to determine in any particular case whether alleged losses or violations resulted

8. Because the suit is brought on the Plan's behalf for the Plan's losses, the number of class members that participate in the suit should not affect the Plan's eventual recovery, if any. Plaintiffs seek relief that restores to the Plan the losses it suffered from Defendants' alleged breaches, not relief that restores to the Plan the Plaintiffs' individual losses.

9. All agree that this argument is inapplicable to the matching contributions EDS invested in the EDS Stock Fund for the two years that the contributions were required to remain in the Stock Fund because Plaintiffs could not have exercised the requisite control over the matching contributions to make the 404(c) defense applicable. *See* 29 U.S.C. § 1104(c)(1)(B); 29 C.F.R. § 2550.404c–1(b)(2)(i)(A) (requiring that under the plan's terms the participant or beneficiary has a reasonable opportunity to give investment instructions to a plan fiduciary who is obligated to follow the instructions).

from participant's or beneficiary's investment decision."). Section 502(a)(2) claims are brought to restore to the plan losses that result from a fiduciary's breach.[10] 29 U.S.C. § 1109(a). Consequently, fiduciaries retain liability for losses caused by their breach of fiduciary duty through imprudent plan management because those losses do not result from the participant's exercise of control. *See Enron,* 284 F.Supp.2d at 578. Thus, the 404(c) defense is inapplicable to shield plan fiduciaries from liability for imprudently selecting the plan's investment options and overseeing their performance.[11] *Id.* (citing Advisory Op. No. 98–04A at n. 1 "[In connection with the publication of the final rule regarding participant directed individual account plans,] the Department [of Labor] emphasized that the act of designating investment alternatives in an ERISA section 404(c) plan is a fiduciary function to which the limitation on liability provided by section 404(c) is not applicable."); *see* 29 C.F.R. § 2550.404c–1(f)(8) (illustrating that if a participant chooses an investment manager, a plan fiduciary is not liable for the manager's imprudence but is liable for his duty to monitor the manager's performance to determine the suitability of retaining the manager); 57 Fed.Reg. at 46924 n. 27 ("[T]he act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA 404(c) plan is a fiduciary function which, whether achieved through fiduciary designation or express plan language, is not a direct or necessary result of any participant direction of such plan."). Further, it is difficult to imagine that Congress intended section 404(c) to create a safe haven for fiduciaries that breach their duties causing loss to the plan or its participants. *See Varity Corp. v. Howe,* 516 U.S. 489, 513, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (discussing ERISA's remedies and stating, "Section 404(a), in furtherance of this general objective [protecting participants and beneficiaries by establishing standards of fiduciary conduct and providing remedies], requires fiduciaries to discharge their duties 'solely in the interest of the participants and beneficiaries.' Given these objectives, it is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy.").[12]

Additionally, the Court has other doubts about whether 404(c) can be applied to claims brought on a plan's behalf under section 502(a)(2). The defense is transactional in nature and applied on a transaction-by-transaction basis against the particular plaintiff bringing the claim. *See* 29 C.F.R. § 2550.404c–1(c)(2) ("Whether a participant or beneficiary has exercised independent control in fact with respect to a transaction depends on the facts and circumstances of the particular case."). As such, like many of the other objections Defendants raised to the Prudence Claims' certification, the 404(c) defense is personal in nature-asserting it only defends against the participant bringing the

---

**10.** Claims can also be brought to restore to the plan a breaching fiduciary's profits that were made through the fiduciary's use of plan assets; fiduciaries are also subject to equitable or remedial relief for their breaches. 29 U.S.C. § 1109(a).

**11.** Plaintiffs' allegations in the Prudence Claims do not raise issues of whether Plaintiffs exercised control over their investments because the Prudence Claims do not involve considerations of what Plaintiffs did during the class period. As already stated, Plaintiffs' Prudence Claims assert allegations about how Defendants treated or managed the Plan. This is in contrast to Plaintiffs' Misrepresentation Claim, in which Plaintiffs allege that Defendants breached their fiduciary duties by how Defendants represented the EDS Stock Fund as an investment option and that Plaintiffs suffered losses when they acted upon those misrepresentations. The substance of the Prudence Claims only involves acts by Defendants, not Plaintiffs. Accordingly, section 404(c) is not available to Defendants as a defense to the Prudence Claims.

**12.** *But see In re Unisys Savings Plan Litig.,* 74 F.3d 420, 445 (3rd Cir.1996) ("[T]he first question we must answer regarding [29 U.S.C.] section 1104(c) [ERISA section 404(c)] is whether the statute allows a fiduciary, who is shown to have committed a breach of duty in making an investment decision, to argue that despite the breach, it may not be held liable because the alleged loss resulted from a participant's exercise of control. In light of section 1104(c)'s plain language, we believe that it does."). *Unisys* is actually not contradictory to this Court's reasoning because if a fiduciary can show that the losses resulted from the participant's exercise of control, then he has shown that the losses did not result from his breach of fiduciary duty.

claim. *See* 29 C.F.R. § 2550.404c–1(c)(2); 57 Fed.Reg. at 46924 ("[I]n following any particular participant's or beneficiary's instruction under a section 404(c) plan, a fiduciary is relieved of liability only with respect to the consequences to the account of the individual participant or beneficiary whose instruction he is following; that fiduciary is not, however, relieved of any fiduciary obligation he may owe to any other plan participant or beneficiary."). To hold that the defense is applicable to claims brought on a plan's behalf under ERISA section 502(a)(2) would be to hold that a plan, or the Labor Secretary, is subject to the individual defenses that the plan's participants are subject to. Although the Plan is dependent upon its participants or beneficiaries (or its fiduciaries or the Labor Secretary) to bring breach-of-fiduciary-duty claims on its behalf, the Plan is a separate legal entity. 29 U.S.C. § 1132(a)(2), (d). As a separate entity, the Plan should not be subject to a defense that can only apply to particular participants and particular transactions. For all these reasons, section 404(c) is inapplicable to Plaintiffs' Prudence Claims and therefore not an impediment to Rule 23(a)'s typicality requirement.

### 2. The Misrepresentation Claim

■ Defendants object to the Misrepresentation Claim's certification on the ground that it will require individualized proof of materiality and reliance that precludes certification. Plaintiffs respond that the materiality standard is objective and does not raise individual issues. Plaintiffs further respond that reliance can be presumed from materiality as to Defendants' alleged nondisclosures and that the Court should apply securities law's fraud-on-the-market theory to prove reliance on Defendants' alleged misrepresentations.

Typicality is not a difficult standard to meet and is satisfied if the representatives' claims share essential characteristics with the class members' claims or if the claims arise from a similar course of conduct and share the same legal theories. *James*, 254 F.3d at 570. Plaintiffs allege that Defendants misstated and concealed information that would have allowed Plaintiffs to discover the unsoundness of their investments. These allegations arise from similar courses of conduct and share the same legal theories. The Courts finds this satisfies Rule 23(a)(3)'s typicality requirement.

Defendants also argue that the class representatives are not typical because some class members will be subject to an ERISA section 404(c) defense. Unlike the Prudence Claims, which are brought under ERISA section 502(a)(2), the Misrepresentation Claim is properly brought under ERISA section 502(a)(3). This claim is not brought on the Plan's behalf and may be subject to the 404(c) defense. Determining whether participants had the opportunity to exercise control may be done on a class-wide basis. *See* 29 C.F.R. § 2550.404c–1(b)(2). Determining whether participants in fact exercised control will raise individualized issues. *See* 29 C.F.R. § 2550.404c–1(c). But the typicality requirement is satisfied because allegations that Plaintiffs did or did not exercise control still arise from similar courses of conduct and share the same legal theories.

### 3. The Rescission Claim

Defendants do not object to the Rescission Claim's certification on typicality grounds. Plaintiffs allege that EDS issued the Plan unregistered EDS stock in violation of Securities Act section 12(a)(1). The Court finds that Plaintiffs have alleged claims that arise from the same course of conduct and share the same legal theories. Plaintiffs satisfy the typicality requirement for the Rescission Claim.

### Rule 23(a)(4)-Adequacy

■ The adequacy determination requires inquiry into the zeal and competence of the representatives' counsel and the representatives' willingness and ability to take an active role in, and control of, the litigation and to protect the absent members' interests. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479, 482 (5th Cir.2001). Differences between the class representatives and the class members do not defeat adequacy unless those differences create conflicts between the representatives and the members. *James*, 254 F.3d at 570. Defendants do not object to counsel's adequacy, and for the reasons dis-

cussed later under Rule 23(g), the Court finds class counsel satisfies the adequacy requirement.

### 1. The Prudence, Misrepresentation, and Rescission Claims

Many of Defendants' objections to the class representatives' adequacy were addressed under typicality. For the same reasons that the representatives' claims are typical, the Court finds the representatives do not have conflicts that prevent them from serving as class representatives. Although Defendants raise their other objections to the representatives' adequacy only as to the Rescission Claim, some of those objections are also relevant to the Prudence and Misrepresentation Claims.

Defendants claim that Smith and Mizell are inadequate class representatives because they have not taken an active role in the litigation. Both Smith and Mizell were present at the class certification hearing. Smith aided in drafting the complaint by giving the attorneys information and documents and has reviewed various forms of the complaint. Smith Deposition at 7, 38, 41. Smith researched and selected the law firms that would prosecute the case and has made other decisions regarding the case. *Id.* at 92, 128–129. Smith has also familiarized himself with documents produced in the case. *Id.* at 72. During his deposition, Smith demonstrated an understanding regarding the class's claims. Smith explained the Plan's employer-match program and demonstrated knowledge of the exchange out/exchange in system of tracking investments in the Plan. *Id.* at 12. Smith has educated himself in finance through reading. *Id.* at 50–51. Smith has the time and desire to be a class representative. *Id.* at 86. Smith is willing to participate in strategic discussions and settlement negotiations and attend depositions, hearings, and trial. *Id.* at 143–144. As to this challenge, the Court finds Smith satisfies the adequacy requirement.

Mizell also satisfies Rule 23(a)'s adequacy requirement. Mizell joined this action as a plaintiff upon the filing of the Second Amended Class Action Complaint. Mizell earned a bachelor's degree in accounting and has studied both management and employee benefits. Mizell Deposition at 14, 17. Mizell is familiar with the allegations in the complaint and the litigation's progress. *Id.* at 268–274. Like Smith, Mizell also possesses the time and desire to be a class representative. *Id.* at 188. Mizell is also willing to participate in strategic discussions and negotiations and attend depositions, hearings, and trial. *Id.* at 268–274. Mizell desires to be a class representative in order to help his fellow employees. *Id.* at 194. For these reasons, the Court finds Mizell satisfies the adequacy requirement.

### 2. The Rescission Claim

■ Specific to only the Rescission Claim, Defendants allege that Smith is inadequate because he lacks standing. Defendants argue that because Smith exited the EDS Stock Plan on December 6, 2001 he could not have held stock within the limitations period. Defendants further allege that Smith sold his stock for a profit and thus cannot assert any damages. Plaintiffs rebut these arguments by claiming that the Plan purchased the unregistered stock and Smith, as a Plan participant, has the right to sue on the Plan's behalf. But Plaintiffs do not bring the Rescission Claim under ERISA on the Plan's behalf; it is brought under the Securities Act. While the Court does not find that Smith cannot make a claim that falls within the Rescission Subclass, the Court finds that Smith has not carried his burden to prove that he does in fact have such a claim. Accordingly, Smith is not an adequate representative of the Rescission Subclass.

### FEDERAL RULE OF CIVIL PROCEDURE 23(b)

A class that satisfies all of Rule 23(a)'s requirements must also satisfy at least one of Rule 23(b)'s three requirements. The three mechanisms for certification under Rule 23 reflect a balance between the need for, and efficiency of, a class action and the class members' interests in pursuing their claims separately or not at all. *Allison,* 151 F.3d at 412. These mechanisms categorize class actions according to the nature or effect of the relief sought. *Id.*

*Rule 23(b)(1)-Inconsistent Adjudications*

■ A class may be certified under 23(b)(1) if separate actions by the class members would create a risk of inconsistent or varying adjudications that establish inconsistent standards of conduct for the defendant. FED.R.CIV.P. 23(b)(1)(A). A class may also be established under 23(b)(1) if separate actions would create a risk that individual adjudications would be dispositive of other members' interests or would substantially impair or impede the other members' ability to protect their interests. FED.R.CIV.P. 23(b)(1)(B). This type of class action encompasses cases in which the defendant is obligated to treat class members alike or where class members are making claims against a fund insufficient to satisfy all of the claims. *Allison,* 151 F.3d at 412.

### 1. The Prudence Claims

Claims brought under ERISA section 502(a)(2) are typically certified under Rule 23(b)(1) or (2). *See Piazza v. EBSCO Indus., Inc.,* 273 F.3d 1341, 1352 (11th Cir.2001). Plaintiffs bring their Prudence Claims on behalf of the Plan as a whole and seek relief on the Plan's behalf. As Plaintiffs are asserting claims on the Plan's behalf, Defendants are obligated to treat class members alike via their treatment of the Plan itself. Because Plaintiffs bring their Prudence Claims under ERISA section 502(a)(2), they are each asserting the same claims-that Defendants injured the Plan. Separate adjudication of these issues would be dispositive of other class members' interests.[13] The Plaintiffs' Prudence Claims qualify for certification under both Rule 23(b)(1)(A) and (B).

### 2. The Misrepresentation Claim

■ As discussed in detail under Rule 23(b)(3), Plaintiffs' Misrepresentation Claim requires individual determinations of materiality and reliance. *See Martinez v. Schlumberger, Ltd.,* 338 F.3d 407, 428 (5th Cir. 2003). These individual determinations could result in differing outcomes. These differing outcomes would not necessarily be "inconsistent" because they would result from differing individualized determinations, which prevent individual adjudications from being dispositive of other class members' interests. Accordingly, Plaintiffs' Misrepresentation Claim is not suitable for certification under Rule 23(b)(1).

### 3. The Rescission Claim

■ The Rescission Subclass Plaintiffs allege that Defendants issued the EDS Stock Fund unregistered EDS stock violating the Securities Act. This claim's main issue is whether Defendants issued unregistered stock to the Plan. This issue is identical as to each of member of the Rescission Subclass. An adverse decision as to one member's claim will be dispositive of the other subclass members' claims. The Court finds certification of the Rescission Claim is proper under Rule 23(b)(1)(B).

*Rule 23(b)(2)-Class-wide Injunctive or Declaratory Relief*

■ A class may be certified under 23(b)(2) if the defendants have acted or refused to act on grounds generally applicable to the class making final injunctive or declaratory relief appropriate to the class as a whole. FED.R.CIV.P. 23(b)(2). This class action mechanism is designed for cases where broad class-wide injunctive or declaratory relief is needed. *Allison,* 151 F.3d at 412. Actions seeking class-wide injunctive or declaratory relief are intended for certification as (b)(2) classes because they involve uniform group remedies. *Id.* at 414.

Monetary relief will predominate the relief sought, making certification under (b)(3) rather than (b)(2) necessary, unless the monetary relief is incidental to the injunctive or declaratory relief. *Id.* at 415. Monetary relief is incidental when it flows directly from liability to the class as a whole on the claims forming the basis for the injunctive or declaratory relief. *Id.* Incidental monetary damages should be capable of objective standards

---

**13.** Over twenty separate actions filed in the Southern District of New York and the Eastern District of Texas have been consolidated for pretrial proceedings to form the case now before the Court. If the class is not certified, these cases will be transferred back to their original districts for their trials creating the risk of inconsistent adjudications.

and not dependent on each class members' circumstances' intangible and subjective differences. *Id.* Determining a defendant's liability for incidental monetary relief should not require additional hearings to resolve individual members' case's merits, infuse new and substantial legal or factual issues, or involve complex individualized determinations. *Id.* Such incidental money damages will be in the nature of a group remedy, consistent with the types of relief intended for (b)(2) classes. *Id.*

### 1. The Prudence Claims

By the very nature of Plaintiffs' claims on the Plan's behalf, Defendants have acted on grounds applicable to the class as a whole. As to their ERISA claims, Plaintiffs seek both injunctive and monetary relief. Plaintiffs seek an injunction that either eliminates the EDS Stock Fund as a Plan investment alternative or appoints a qualified person unaffiliated with EDS to the Investment Committee to evaluate and monitor the EDS Stock Fund and distribute materials addressing the Stock Fund's risks to Plan participants and beneficiaries. Plaintiffs also seek monetary relief paid to the Plan in order to make the Plan whole. This monetary relief is incidental to the injunctive relief because it will only be awarded if Defendants are found liable on the claims that form the injunctive relief's basis and, if awarded, will go directly to the Plan as a whole. Because the monetary relief is for the Plan's losses rather than individual participants' losses, determining the amount of monetary relief will not require additional individualized hearings.[14] As the monetary relief will go to the Plan itself, it is in the nature of a group remedy. The Plaintiffs' Prudence Claims qualify for certification under Rule 23(b)(2).

### 2. The Misrepresentation Claim

■ Plaintiffs' Misrepresentation Claim requires individual determinations of materiality and reliance, and therefore class-wide relief is precluded. Accordingly, Plaintiffs' Misrepresentation Claim is not suitable for certification under Rule 23(b)(2).

### 3. The Rescission Claim

■ Although Plaintiffs do seek equitable relief through rescission of the unregistered stock purchases, Plaintiffs do not seek injunctive or declaratory relief as to their Rescission Claim. Accordingly, certification under Rule 23(b)(2) is not proper.

### Rule 23(b)(3)-Common Questions of Law or Fact

A court may also certify a class if questions of law or fact predominate over questions affecting individual class members and a class action would be superior in fairness and efficiency to other available adjudication methods. FED.R.CIV.P. 23(b)(3). In determining this, a court should consider: (A) the class members' interest in individually controlling their separate actions, (B) the extent and nature of existing litigation by class members concerning the same claims, (C) the desirability of concentrating the litigation in the particular forum, and (D) the likely difficulties of managing a class action. FED. R.CIV.P. 23(b)(3). Classes certified under Rule 23(b)(3) require notice to the potential class members and the opportunity to opt out of the class. FED.R.CIV.P. 23(c)(2)(B). This class action mechanism is intended for use when class certification is convenient and desirable but the classes cannot qualify for (b)(1) or (b)(2) certification. *Allison,* 151 F.3d at 412. Such cases include large-scale, complex litigation for money damages. *Id.*

### 1. The Prudence Claims

Because the Court finds the Prudence Claims should be certified under Rule 23(b)(1) and (2), the Court declines to certify the claims under Rule 23(b)(3). *See Piazza,* 273 F.3d at 1352–53 (holding that it was an abuse of the trial court's discretion to certify an ERISA section 502(a)(2) claim under Rule 23(b)(3) when certification was proper under Rule 23(b)(1)).

### 2. The Misrepresentation Claim

■ Although there is not a Fifth Circuit case that addresses the standards for materi-

---

**14.** If the Plan does recover in this suit, the Court anticipates appointing an independent fiduciary to act on the Plan's behalf to allocate its recovery to the participants' individual accounts.

ality and reliance in an ERISA breach-of-fiduciary-duty class action for misrepresenting plan investment options, extending the Fifth Circuit's rationale in similar contexts leads to the conclusion that such a claim will raise individual issues that predominate over common issues. A plaintiff must establish reasonable and detrimental reliance upon a material misrepresentation to recover for breach of fiduciary duty based on misrepresentations. *See Weir v. Fed. Asset Disposition Ass'n*, 123 F.3d 281, 290 (5th Cir.1997) (requiring proof of a material misrepresentation, reasonable and detrimental reliance, and extraordinary circumstances in a class action to recover benefits under an equitable estoppel theory alleging misrepresentations about the interpretation and implementation of the benefits plans).

In the context of a breach-of-fiduciary-duty suit for misrepresentations about a benefits plan's potential changes, the Fifth Circuit adopted a fact-specific approach to determine whether the alleged misrepresentations were material. *Martinez*, 338 F.3d at 407 (drawing on securities law's materiality concept). The analysis's overarching questions is "whether there is a substantial likelihood that a reasonable person in the plaintiffs' position would have considered the information an employer-administrator allegedly misrepresented important in [making his decision]." *Id.* at 428. This involves consideration of several factors, including "how significantly the statement misrepresents the present [situation], whether the employee knew or should have been aware of other information or statements from the company tending to minimize the importance of the misrepresentation, and the specificity of the [misrepresentation]." *Id.*

Generally, claims involving individual reliance are unsuitable for class certification. *Sandwich Chef, Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 219 (5th Cir.2003) ("Cases that involve individual reliance fail the predominance test."); *Simon v. Merrill Lynch, Pierce, Fenner & Smith*, 482 F.2d 880, 882–83 (5th Cir.1973) ("If there is any material variation in the representations made or in the degrees of reliance thereupon, a fraud case may be unsuited for treatment

as a class action."). In order to avoid individualized reliance issues, Plaintiffs argue that the standard set forth in *Martinez* is an objective, reasonable person, standard and urge the Court to apply securities law's fraud-on-the-market presumption in this ERISA context. While the *Martinez* standard does direct a court to consider a "reasonable person in the plaintiffs' position," it also specifically directs a court to consider "whether *the employee* knew or should have been aware of other information." *Martinez*, 338 F.3d at 428 (emphasis added). Further, when the *Martinez* court analyzed whether the statements at issue were material, it looked at the specific statements made to the plaintiffs and their context. *Id.* at 431. The class members in this case held innumerable different positions at EDS giving them access to vastly different information about EDS and eliminating any potential generalizations that could be made as to their knowledge of other information about EDS's financial position. Determining whether class members knew or should have been aware of other information minimizing the alleged misrepresentations will require individual assessments. Because recovery on their Misrepresentation Claim requires individualized proof of materiality and reliance, the Court finds that individual issues will predominate, and the claim is unsuited for class certification under Rule 23(b)(3).

This claim is also unsuited for certification under Rule 23(b)(3) because Defendants' ERISA section 404(c) defense will raise individualized issues that predominate over common issues. Unlike the Prudence Claims brought under section 502(a)(2), the Misrepresentation Claim is not brought on the Plan's behalf and may be subject to the 404(c) defense. Whether participants or beneficiaries have the opportunity to exercise control can be assessed on a class-wide basis, but whether they did in fact exercise such control requires individualized analyses. In order for a participant or beneficiary to have the opportunity to exercise control, the plan must provide participants and beneficiaries a reasonable opportunity to give investment instructions to an identified plan fiduciary who is obligated to follow the instructions. 29 C.F.R. § 2550.404c–1(b)(2)(i)(A). The

participant or beneficiary must also be provided, or have the opportunity to obtain, sufficient information to make informed decisions regarding the plan's investment alternatives. *Id.* at (b)(2)(i)(B). A participant or beneficiary is not considered to have sufficient information unless he is provided certain specific information including that: (i) the plan is intended to be an ERISA section 404(c) plan and the plan's fiduciaries may be relieved of liability for losses that are the direct and necessary result of the participants' or beneficiaries' investment instructions and (ii) a description of the plan's investment alternatives and each investment alternative's objectives, risks, and return characteristics. *Id.* at (b)(2)(i)(B)(1)(i),(ii).

Assuming participants and beneficiaries are given the opportunity to exercise control, which involves fact determinations that are not now ripe for decision, determining whether they in fact exercised such control requires individualized evaluations. "Whether a participant or beneficiary has exercised independent control in fact with respect to a transaction depends on the facts and circumstances of the particular case." *Id.* at (c)(2). The exercise of control is not independent if: (i) the plan's fiduciary or sponsor subjects him to improper influence with respect to the transaction, (ii) a plan fiduciary concealed material non-public facts about the investment from the participant or beneficiary, or (iii) the plan's fiduciary knows the participant or beneficiary is legally incompetent and accepts his instructions anyway. *Id.* Plaintiffs argue that the misrepresentations that form the basis of their Misrepresentation Claim prevented their exercise of independent control and so make 404(c)'s affirmative defense inapplicable. Given the transactional nature of section 404(c)'s defense, determining its applicability will require individualized determinations that defeat typicality. These individualized determinations will raise individual issues that predominate over common issues making the Misrepresentation Claim unsuitable for class certification under Rule 23(b)(3).

### 3. The Rescission Claim

■■■ Because the Court has found certification proper under Rule 23(b)(1), the Court declines to certify the Rescission Claim under Rule 23(b)(3). Although Plaintiffs seek monetary relief for the Rescission Claim, Plaintiffs' claim does not raise the concerns that Rule 23(b)(3) was designed to address. Plaintiffs primarily seek relief through rescission of the unregistered stock purchases. Plaintiffs seek monetary relief only to compensate those class members for whom rescission is not possible because they no longer hold the unregistered stock. The amount of monetary relief is not based on individualized liability issues but on the amount of stock held. Thus, the Rescission Subclass members do not have divergent interests that trigger the procedural safeguards of Rule 23(b)(3).[15] If Defendants are liable to the class, they will be liable to all class members in the same way and to the same extent-that of their stock ownership. The Court declines to certify the Rescission Subclass under Rule 23(b)(3).

### FEDERAL RULE OF CIVIL PROCEDURE 23(c)

*Rule 23(c)(1)(B)-Class Definitions*

An order certifying a class action must define the class and its claims, issues, or defenses. FED.R.CIV.P. 23(c)(1)(B). A district court may limit or modify class definitions to provide necessary precision. *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir.2004). A precise class definition is necessary to identify those class members entitled to relief, entitled to notice (if required), and bound by the judgment. *Id.* at 413. A precise class definition may be less important when notice and opt-out rights are not at issue. *See id.*

### 1. The Prudence Claims

Plaintiffs seek certification of a class defined as "all participants in the Plan and their beneficiaries, excluding the Defendants, for whose accounts the Plan made or maintained investments in EDS stock through the

---

**15.** *See Allison*, 151 F.3d at 412–413 (discussing Rule 23(b)(3)'s notice and opt-out provisions as protections from class members' divergent interests).

EDS Stock Fund between September 7, 1999 and the present." For practical reasons, most importantly those of judicial economy, the Court adopts Plaintiffs' proposed definition, but limits the class to those participants and beneficiaries for whom the Plan invested in the EDS Stock Fund between September 7, 1999 and October 9, 2002.[16] This limitation provides the necessary precision to identify absent class members.

## 2. The Rescission Claim

Plaintiffs' proposed class definition includes "all participants in the Plan and their beneficiaries, excluding the Defendants, for whose accounts the Plan purchased EDS stock through the EDS Stock Fund between October 20, 2001 and November 18, 2002, inclusive." Defendants do not object to this proposed class definition, and the Court finds it sufficiently identifies the class.

### *Rule 23(c)(2)-Notice Requirement*

 Notice to potential class members is permissive but not mandatory if the class is certified under Rule 23(b)(1) or (2). FED. R.CIV.P. 23(c)(2)(A). Notice is mandatory for all classes certified under 23(b)(3). FED. R.CIV.P. 23(c)(2)(B). The right to notice in (b)(3) classes reflects concern for class cohesiveness in actions seeking money damages. *Allison*, 151 F.3d at 413. At minimum, due process requires an absolute right to notice in actions seeking money damages. *Id.* at 413 n. 4. This is in contrast with the (b)(2) class, which is premised on a common injury properly addressed by class-wide relief and thus assumed to be a homogenous and cohesive group with few conflicts of interest among its members. *Id.* at 413. When money damages predominate the relief sought, class cohesiveness decreases and the need for safeguards to protect the class members' individual rights increases. *Id.* As the predominance of money damages increases, the appropriateness of certification as a(b)(2) class decreases. *Id.*

## 1. The Prudence Claims

These claims are certified under Rule 23(b)(1) and (2), thus 23(b)(3)'s notice and opt-out requirements are not required. While some courts have held that due process requires notice to absent members of classes certified under 23(b)(2) that seek money damages, those cases are inapposite here. Those cases involved claims for individual monetary relief that could be barred through res judicata by the class suit. *See In re Monumental Life Ins. Co.*, 365 F.3d at 417 n. 13 (citing *Allison, Johnson,* and *Penson*); *Allison,* 151 F.3d at 413 n. 4 (relying on *Johnson*); *Penson v. Terminal Transport Co.,* 634 F.2d 989, 994 (5th Cir. Unit B Jan. 1981) (relying on *Johnson*); *Johnson v. Gen. Motors Corp.,* 598 F.2d 432, 436–38 (5th Cir. 1979) ("Where, however, *individual* monetary claims are at stake, the balance swings in favor of the provision of some form of notice.") (emphasis added). That is very different than the situation before the Court. With respect to the Prudence Claims, the Plaintiffs' claims for monetary damages are not their own individual claims, but belong to the Plan on whose behalf the claims are brought. Because these claims belong to the Plan rather than the Plaintiffs individually, the absent class members' due process rights are not implicated. Accordingly, the Court finds those cases requiring notice in a Rule 23(b)(2) class seeking monetary relief are not controlling, and notice is not required. Notice is therefore discretionary, and the Court finds that the expense and burden of sending notice outweighs any benefit it may bring. Notice is not required to be sent to the absent Plaintiffs.

## 2. The Rescission Claim

Those cases requiring notice when claims are asserted for money damages have done so in the context of classes certified under Rule 23(b)(2). *See In re Monumental Life Ins. Co.,* 365 F.3d at 417 n. 13 (5th Cir.2004); *Allison,* 151 F.3d at 413 n. 4; *Penson,* 634 F.2d at 994; *Johnson,* 598 F.2d at 436–38. This class is certified exclusively under Rule

---

**16.** Should discovery reveal any fiduciary breaches that occurred after October 9, 2002 and caused loss to the Plan, the Court will entertain a motion to reconsider upon the Plaintiffs' showing good cause.

23(b)(1); thus, the notice requirement described above is inapplicable, and sending notice is within the Court's discretion. Similar to the Prudence Claims, the cost and burden of sending notice far outweighs any benefit notice may bring. The Court declines to require Plaintiffs to send the absent class members notice at this time.

## FEDERAL RULE OF CIVIL PROCEDURE 23(g)

*Rule 23(g)-Class Counsel*

Unless provided otherwise by statute, when a court certifies a class the court must appoint class counsel. FED.R.CIV.P. 23(g)(1)(A). The appointed counsel must fairly and adequately represent the class's interests. FED.R.CIV.P. 23(g)(1)(B). In making such an appointment, there are a variety of factors the court should consider. The court must consider: counsel's work in identifying or investigating the class's claims; counsel's class-action, complex litigation, and similar claims experience; counsel's knowledge of the applicable law; and counsel's resources committed to class representation. FED.R.CIV.P. 23(g)(1)(C)(i). The court may consider other matters pertinent to counsel's ability to fairly and adequately represent the class's interests. FED.R.CIV.P. 23(g)(1)(C)(ii).

Defendants do not object to proposed class counsel's competency or allege any conflicts that disqualify proposed class counsel. The Court appointed proposed class counsel to represent the Plaintiffs in the consolidated action. Proposed class counsel has investigated and defended Plaintiffs' claims against the motions to dismiss. Proposed class counsel has extensive ERISA class-action experience and is willing to commit the resources necessary to take this case to trial. The Court finds proposed class counsel satisfies Rule 23(g)'s requirements.

## BENEFITS OF CERTIFICATION

Although Plaintiffs seek relief for the Plan's losses and not their own individual losses, and any relief sought under ERISA section 502(a)(2) must inure to the Plan's benefit, the Court believes certification is desirable.[17] The class action's chief purpose is to achieve a significant measure of judicial economy. *Allison*, 151 F.3d at 414. The Court is concerned with providing Defendants some amount of security that all potential plaintiffs' claims have been finally resolved either through judgment or settlement. As anyone familiar with the court system knows, the vast majority of civil cases settle prior to trial. To the extent that such security may encourage a pretrial settlement, the Court feels certification is desirable.

The protections afforded by Rule 23 also support certification. Although not necessarily applicable in this case because the Court has appointed counsel for the consolidated cases, the Court also finds that the requirement of appointing class counsel generally weighs in favor of certification. Further, the option of court-directed notice, even if not employed, favors certification because adjudicating claims brought on an ERISA plan's behalf affects putative class members' rights. The Court's ability to approve or recognize certain plaintiffs as class representatives also favors certification. Finally, the Court's authority to approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses also favors certification as an additional means of protecting absent class members.

Certification of ERISA claims such as these do not present the same concerns the Fifth Circuit addressed in *Castano* about mass tort litigation. *See Castano*, 84 F.3d at 734. Certification of mass tort cases dramatically affects defendants. *Id.* at 746. "Certification magnifies and strengthens the number of unmeritorious claims" and "makes it

---

**17.** Several courts have certified an ERISA section 502(a)(2) class or upheld such certification, but were silent regarding the rationale for certification. *See e.g., Piazza,* 273 F.3d at 1341; *Kayes,* 51 F.3d at 1449; *Thornton v. Evans,* 692 F.2d 1064 (7th Cir.1982); *Rankin v. Rots,* 220 F.R.D. 511 (E.D.Mich.2004); *In re Amsted Indus., Inc.,* 263 F.Supp.2d 1126 (N.D.Ill.2003); *In re Ikon Office Solutions, Inc.,* 191 F.R.D. 457 (E.D.Pa. 2000). Others courts have decided against certification because of the claims' derivative nature. *See Cain v. Healthtrust, Inc.,* 2:96–cv–149 (E.D.Tex. July 2, 2001) (Ward, J.).

**634**

more likely that a defendant will be found liable and results in significantly higher damage awards." *Id.* Mass tort certification can skew trial outcomes and create great pressure on defendants to settle, even when there is a low probability of an adverse outcome. *Id.* Those concerns are not applicable to ERISA claims brought on a plan's behalf. The damages alleged are to the plan and should not increase as additional plaintiffs are added. The plaintiffs assert identical claims on the plan's behalf rather than individual claims, so there is a no risk of additional unmeritorious claims with additional plaintiffs. While hopefully certification will benefit defendants by giving them the security that any settlement agreement will bind all putative plaintiffs, it should not create pressure based on the fear of skewed trial outcomes. For all these reasons, the Court finds that class certification is judicious.

### CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Class Certification as to Counts 1, 2, and 4 and defines the class as all participants in the Plan and their beneficiaries, excluding Defendants, for whose accounts the Plan made or maintained investments in EDS stock through the EDS Stock Fund between September 7, 1999 and October 9, 2002. The Court finds Count 3 does not satisfy Rule 23's requirements and **DENIES** Plaintiffs' Motion for Class Certification as to Count 3. The Court **GRANTS IN PART** Plaintiffs' Motion as to Count 5 with the class defined as all participants in the Plan and their beneficiaries, excluding the Defendants, for whose accounts the Plan purchased EDS stock through the EDS Stock Fund between October 20, 2001 and November 18, 2002, inclusive, but **DENIES IN PART** without prejudice to the extent Plaintiffs moved to name Smith as a class representative.